## HASTY *v.* HAMPTON STAVE COMPANY.

Opinion delivered November 5, 1906.

1. SALE—CORRECTION OF MISTAKE.—Where a contract for the sale of a quantity of staves provided that a count of the staves on which the price to be paid depended should be taken at the place of delivery, without stipulating that such count should be final, regardless of mistakes, it is open to either party to show that the sale was made under a mutual mistake as to the quantity delivered. (Page 408.)

2. SAME—ESTOPPEL TO CORRECT MISTAKE.—Where a vendee sought to correct a mutual mistake in a count of staves sold, and the vendor invoked the rule of estoppel against the vendee on the ground that he had purchased the staves from another and settled on the basis of the same count, it was necessary, to sustain the application of the rule, to show that the vendee, having notice that his vendor was dealing with an insolvent seller and would sustain a loss by reason of a mistake in the count, was negligent either in making the count or in failing to discover and report the mistake within a reasonable time; and such estoppel could be invoked only to the extent that injury resulted to the vendor by reason of such mistake. (Page 409.)

Appeal from Greene Circuit Court; *Allen Hughes,* Judge; reversed.

*J. D. Block* for appellants; *F. H. Sullivan* of counsel.

1. The declaration for a balance of $39.40 alleged to be due on staves delivered under the "El Dorado" contract was a separate

cause of action, and the circuit court had no original jurisdiction thereof. 1 Ark. 252; 3 Ark. 494; 5 Ark. 34; 9 Ark. 463; 18 Ark. 249; 35 Ark. 287.

2. Not only is it a general rule that money paid under a mistake of fact may be recovered, but the rule applies also to mistakes with reference to quantity in the sale of chattels. 73 Ark. 565; 17 Am. & Eng. Enc. Law (2 Ed.), 814; 20 Wend. 174; 2 Lans. 49; 3 Maule & Selwyn, 344; 101 Ill. 138; 119 Ga. 516; 62 Mich. 63; 20 Ct. of Claims, 445.

3. On the question of estoppel, where a party' acts under mistake, or where there is equal opportunity to know the facts, there is no estoppel. 15 Ark. 62. To create an estoppel, there must be an intention to deceive, or negligence so gross as to be culpable —a wilful attempt to make the adverse party act on the faith of the representation. 53 Ark. 200; 54 Ark. 509; *Ib.* 467. "It will in all courts be fatal to the supposed estoppel claimed that the representation was made in ignorance, through mistake." Bigelow on Estoppel (5 Ed.), 617; *Ib.* 557; 16 Am. & Eng. Enc. Law, 726. See, also, 93 U. S. 335; 5 Met. 484; 25 Conn. 128; 111 Ill. 526; 137 Ill. 112; 58 Tex. 6; 90 Ind. 293; 73 N. C. 627; 97 Mo. 273; 52 Atl. 354; 7 Ohio St. 105.

Appellee, *pro se.*

Appellants are estopped by their own conduct, particularly their negligence, as shown by the proof in the case. Appellee had had nothing to do with the counting of the staves, which was left entirely with appellants, and expressly refused to settle with McGhee until presented with an O. K. statement from appellants. Bigelow on Estoppel (5 Ed.), 631; *Ib.* 612, 613; 10 Am. Dec. 316; 83 Me. 105; 173 Ill. 580; 11 Col. 407; 64 Cal. 388; 93 Ind. 570; 1 Story's Eq. 390, note. See, also, 35 Ark. 376.

*Pugh & Wiley,* for appellee.

In the absence of fraud, the count by appellants' designated agent is binding on both parties to the contract. Mechem on Sales, § § 212, 674, 673, 729. Appellants are also estopped from disputing the count because, relying on it, appellee has changed its situation. Collier's statement, if wrong, was not an innocent mistake. It was a positive statement, as appellants' agent, of

facts which they were bound to know at their own peril. Their ignorance can not remove the estoppel. Bigelow on Estoppel (3 Ed.), 530. If ignorant of the mistake, they were culpably negligent, and are estopped. *Id.*

"When one so conducts himself that a reasonable man would take the representation to be true, and believe it was meant that he should act upon it, he will be estopped from contesting its truth the same as if he knew when he made the representation that it was to be acted upon." Bigelow on Estoppel (3 Ed.), 541, 543, and note. See, also, *Id.* 520; 57 Mo. 478; 54 Cal. 422.

McCULLOCH, J. Appellee, Hampton Stave Company, sold to appellants, J. F. Hasty & Sons, at a stated price, a lot of West India and whisky barrel staves, to be delivered on the railway track at Chidester, Ark. The staves were delivered, counted and accepted at the place named, and were shipped away by appellants, who paid the sum of $14,336.81 on the price. Appellee sued for an alleged balance of $379.80 due on the price according to the count made of the staves at Chidester before shipment, and appellants dispute liability for this balance on the alleged ground that there was a mistake in the count made at Chidester, and that they had paid the agreed price in full according to a correct count of the staves.

The written contract between the parties for the sale of the staves is as follows:

"We to pay to H. S. Company $47.50 or $48.00 for W. I. and $31.50 for barrels of the McGhee stock at Chidester, we to count the stock there and load same at our expense; counting to be done as soon as possible, and commenced a few days after December 25, 1903. Count to be with McGhee or representative of H. S. Company.

[Signed]                                    "J. F. HASTY & SONS."

The staves were counted at Chidester before delivery to appellants by a man representing them and a man representing one McGhee from whom appellee purchased the staves. These parties rendered a report in writing of the count, and appellee claims the full price based on this count.

One of the officers of appellee company testified that the staves were manufactured by McGhee, from whom his company purchased them for resale, and that the company, as soon as it

received the report of the count at Chidester, settled with McGhee according to that count and paid him for the staves. Appellants introduced testimony tending to establish the fact that there was a mistake in the count at Chidester, and that they had paid for the staves according to a correct count. Their testimony tended to show that there was a shortage of 7,018 West India and 4,303 whisky staves from the Chidester count, and that the final corrected count after shipment varied only 30 staves from the aggregate factory count by McGhee, the manufacturer.

The court, over the objection of defendants, gave the following instruction to the jury:

"If you find by a preponderance of the evidence that the parties here made a contract by the terms of which the staves in question should be counted by defendants at the point of shipment; that they were so counted and statement rendered by defendants to plaintiff; that thereupon, relying upon such statement, plaintiff in good faith paid McGhee for the number of staves specified in the statement; and that according to such statement there is a balance due plaintiff under the contract, you will find for plaintiff in the amount of such balance."

The jury returned a verdict in favor of the plaintiff for the amount of the claim set forth in the complaint. Judgment was rendered accordingly, and the defendants appealed.

Pretermitting any discussion as to whether or not it is competent for the parties to a transaction of this kind to contract for a final ascertainment at the place of delivery of the quantity of the articles sold, so as to cut off the subsequent right of the purchaser, in the absence of fraud, to have a mistake in such ascertainment corrected, it is sufficient to say that the parties in this case made no such contract. The contract before us provides for a count of the staves at the place of delivery, but it does not stipulate that the count shall be final, regardless of mistakes. It seems clear to us that, before a party to such transaction can be barred from claiming a correction of mistake, it must be so expressly stipulated in the contract; otherwise the contracting parties will not be deemed to have bound themselves to that extent. It is an elementary principle that if the parties to a contract for the sale of chattels consummate the sale under a mutual mistake

as to the quantity delivered, either party on discovery of the mistake has the right to a correction.

The single instruction of the court submitting the case to the jury on the question of estoppel of defendants is erroneous in that it ignores some elements essential to the application of that doctrine to the facts of the case. In order to invoke the rule of estoppel against appellants, it must appear that, having information that appellee was dealing with an insolvent vendor and would sustain loss by reason of a mistake in the count, they were guilty of negligence in making the count or negligently failed to discover · and report the mistake within a reasonable time. For, if the contract itself did not bind them conclusively to abide by the count at Chidester, nothing short of their negligence in making the count, or in discovering and reporting the mistake within a reasonable time, having notice or information as to probability of injury to appellee, could cut off their right to have it corrected.

Even in the event of negligence of appellants in making the erroneous count, the estoppel could only be invoked to the extent of the injury resulting to appellee on account of overpayments thereafter made to its vendor by reason of the mistake.

Appellee included in its demand set forth in the complaint the sum of $39.49 balance due on the former sale of another lot of staves. Counsel for appellant contend that this constitutes a separate cause of action, and is not within the jurisdiction of the circuit court. The suit is not upon written obligations for the payment of separate amounts, and therefore does not include separate causes of action. The complaint sets forth one cause of action upon different items of account for the price of staves sold at different times. The court had jurisdiction.

· For the error indicated in the instructions to the jury the judgment is reversed, and the cause remanded for a new trial.

HILL, C. J., not participating.