SIMMONS *v.* SIMMONS.

4-6562                                                    158 S. W. 2d 42

Opinion delivered January 19, 1942.

Duty & Duty and Clyde T. Ellis, for appellant.

Melvin F. Adler and Vol T. Lindsey, for appellee.

McHaney, J.  Appellant is the widow of J. T. Simmons, deceased, and is the administratrix of his estate, he having died intestate in Benton county, Arkansas, on March 11, 1935.  Appellees are the children of J. T. Simmons by his first wife, he having been married three times, and are his sole heirs at law, no children having been born to either his second wife or to appellant, his third wife.

On March 6, 1934, J. T. Simmons purchased from Mattie E. Renfro a tract of land in Benton county, the land here in controversy, and received from Mrs. Renfro a warranty deed therefor, which conveyed said tract of

land to him as sole grantee. After the deed was executed and delivered to him as sole grantee, he either changed or altered it himself or had it changed or altered so as to add the words "and Nora Simmons" after his name wherever it appeared in said deed. As changed or altered, the deed appeared to convey the tract of land to J. T. Simmons and Nora Simmons. No change was made in the deed otherwise. For instance as originally written, the conveyance was to J. T. Simmons "and unto *his* heirs and assigns" and the word "his" was not changed to the word "their."

Appellees brought this action as the sole heirs at law of J. T. Simmons to cancel the name of Nora Simmons from said deed and for a decree vesting the title to said land in them, subject to the dower and homestead rights of appellant. The complaint did not allege that appellant changed or altered the deed in the respect stated, or that it was done with her knowledge, advice or through her procurement, but only "that said alteration is fraudulent and made for the purpose and intent of attempting to vest the title to said real estate in the defendant in case the said J. T. Simmons preceded the defendant in death." It was also alleged that the conveyance as made vested the title in J. T. Simmons and that the alteration is fraudulent as to them, and that it did not in any way affect said conveyance, nor did it vest any title in appellant. The original answer was a general denial of the allegations of the complaint. By an amendment thereto, it was asserted that, from 1921 to 1935, appellant and her husband were residents of California; that the moneys used to purchase said lands were earned and acquired while they were residents of said state and were their community and joint funds; that said community and joint funds were used to purchase said land; and that the title thereto vested in them jointly and in her as survivor, regardless of whose name appeared in said deed when executed and delivered. It was further asserted that, if, in fact, the name of Nora Simmons was inserted in said deed after its execution, it was done so by J. T. Simmons in good faith, without her knowledge or connivance, and that she continued to live

with her husband after said purchase and to assist him both with her labors and efforts and out of their funds to improve the place, believing that she held title with him jointly, without complaint from appellees as to said title until after his death.

Appellees thereafter filed an amendment to their complaint alleging that, at the time of his death, J. T. Simmons was the owner of certain stock certificates in the Oklahoma Savings & Loan Association of Oklahoma City, which had been Federalized and the name changed to Capital Federal Savings & Loan Association, and that certain dividends and other payments had been paid to appellant as administratrix of said estate, and prayed that she be required to account for same. Answering this amendment to the complaint appellant said that said estate was the owner of the stocks alleged and that she had received as dividends or otherwise the amounts stated, but in bar of the rights of appellees therein or thereto she plead a judgment of the Superior Court of Ventura county, California, wherein the appellees were plaintiffs and she was defendant, and the question being whether she was entitled to all the property of said estate as being community and as belonging to her after the death of her husband, and in which the court held that 60 per cent of the property in controversy is community and the remaining portion is the separate estate of J. T. Simmons. She therefore plead *res adjudicata*. With further reference to the alteration of said deed, she alleged that, if it was altered, it was done by her husband without her knowledge or connivance, and placed of record by him. She, therefore, plead that J. T. Simmons would have been estopped in his lifetime to question her rights, and that appellees as his heirs are likewise so estopped.

Trial resulted in a decree reforming said deed and the record thereof, "and that the name 'Nora Simmons' be of no force or effect as grantee in said deed," and quieted and confirmed title to said lands in appellees, subject to the dower and homestead rights of appellant. Appellant was also required to account as administratrix for the stocks and moneys collected in connection with the

loan associations hereinbefore mentioned. From this decree she has appealed to this court.

As stated above, we think the record conclusively shows that said deed was altered or changed by the addition of the words "and Nora Simmons" in three places in said deed, and that it was either done by J. T. Simmons himself, or that it was done by someone else at his direction and with his knowledge and consent. The original deed is in the record and was drawn on a form with pen and ink by Bernard Harrison, mayor of Sulphur Springs. As originally drawn, as executed, as acknowledged and as delivered to J. T. Simmons, it is conceded that it was a conveyance to J. T. Simmons as sole grantee. The deed was dated and acknowledged March 6, 1934. It was filed and recorded April 24, 1934. The insertion of the words "and Nora Simmons" was made between those dates, and on the blank form used by the scrivener, the insertion was so made as to have the appearance of having been made by the scrivener, in his handwriting and with the same pen and the same color of ink. Some person, either Mr. Simmons or some person for him, attempted to imitate the handwriting of Bernard Harrison and did a very good job of it. An expert witness testified most positively the insertion was the handwriting of Mr. Simmons. In our view, it makes no difference whether he wrote the words "and Nora Simmons" in the deed himself, or had someone else do it. The result is the same. There are several facts that convince us that he did it or had it done. Jim Renfro, son of the grantor, testified that, when he and his sister delivered the deed to Mr. Simmons, the latter said: "I aimed to have my wife's name put on this deed but I didn't, but it is all right." At the time the deed was executed and delivered, at the time it was recorded as altered, and until about September, 1934, appellant was in California, in Hollywood, where they had an apartment, and Mr. Simmons was living in the new home in Benton county, Arkansas, with appellant's nephew and his wife, a part of the time and a part of the time he was in California with appellant. Shortly after buying said lands on March 6, 1934, he wrote appellant a letter dated March

27, 1934, in answer to a letter from her, in reference to the purchase of this property, and in which he stated: ''Sweetheart the makers of deeds do all the signing not the buyers, and it is a joint deed and for your edification and pleasure will say that in the State of Ark. a joint estate goes to the survivor in toto. But you have not got a farm by a long sight for I do not purpose to die for quite a spell—See.'' Appellant never saw this deed until after her husband's death, when she found it in the car trailer, used by them in their travels over the country. We, therefore, conclude that Mr. Simmons changed the deed or had it done, before recording it, without the knowledge of appellant, and that he would, in his lifetime, have been estopped, and that his heirs now are estopped, to assert that she is not a joint grantee therein. As his heirs appellees succeeded only to such rights as their father had. As said by this court in *Mason* v. *Dierks Lumber & Coal Co.,* 94 Ark. 107, 125 S. W. 656, 26 L. R. A., N. S. 574: ''With respect to the persons who are bound by or who may claim the benefit of an estoppel, it operates between the immediate parties and their privies, whether by blood, by estate or by contract.'' In *Abbott* v. *Abbott,* 189 Ill. 488, 59 N. E. 958, 82 Am. St. Rep. 470, it was said: ''If George B. Abbott (grantee in a. deed which had been altered to show his daughter as grantee) himself procured the change to be made, he could not repudiate it afterwards and claim title in himself, notwithstanding the alteration; and, therefore, to sustain his contention that the title is still in him, he must have shown by proof that such title vested in him by a delivery of the deed prior to the alteration and that he did not make the change or consent that it could be made.''

The alteration of the deed here in question did not have the effect of destroying the conveyance or to revest the title in the grantor. As we said in *Faulkner* v. *Feazel,* 113 Ark. 289, 168 S. W. 568: ''It is undisputed that when the deed was acknowledged it was a valid conveyance of the land in controversy, and if it was delivered it conveyed the title to the land there described, and these

subsequent interlineations (the proof does not show by whom made) did not operate to defeat the conveyance.''

We do not hold that the deed here in question had the effect of conveying the title to appellant by reason of the alteration. On the contrary, the title to the land there described vested in him, but his act in altering the instrument by inserting her name as a joint grantee estopped him and his heirs, appellees, from contesting her rights as the survivor. The decree of the court holding otherwise will be reversed and the cause remanded with directions to dismiss this part of the complaint for want of equity.

As to that part of the decree which required appellant to account in her settlement as administratrix of said estate for the Oklahoma stocks, cash and other personal property, we think the court was correct and that the decree should be affirmed.

J. T. Simmons was a resident of this state when he died. Appellant so stated under oath in her application for letters of administration both in Benton county and in California. The fact that he had resided in California, a community property state, and that he had accumulated most of his wealth there cannot be held to change the rule in this state that the *situs* of personal property is the residence of the owner and that it will descend and be distributed according to the law of this state where the owner dies a bona fide resident of this state. Nor do we agree with appellant that the judgment of the California court is *res adjudicata* of this cause in our courts. This property, as also the real estate here involved, was not subject to the foreign jurisdiction and it does not appear from the judgment that the court there attempted to assume jurisdiction or that it did adjudicate the matter. Therefore, the decree in this respect is affirmed.

Mr. Justice Greenhaw being of the opinion that the insertion of the name of the appellant in the deed after it had been fully executed, acknowledged and delivered did not stop appellees from contesting appellant's claim of ownership of the land in question, he, therefore, dis-

sents from so much of the above opinion as reverses the decree of the lower court.