LEVESTER COLE v. BETHEL COLE

5-5412                                              462 S. W. 2d 213

Opinion delivered January 18, 1971
[Rehearing denied February 15, 1971.]

*Sharpe & Wilkinson,* for appellant.

*Carrold E. Ray* and *Robert J. Donovan,* for appellee.

JOHN A. FOGLEMAN, Justice. The administrator of the estate of Joe Cole, Jr. brings this appeal from a judgment of the probate court that appellee Bethel Cole was the lawful widow of appellant's decedent and entitled to the widow's statutory interest in his estate. The judgment was based upon the court's finding that appellant had not overcome the presumption of validity of a second or subsequent marriage. We find that the preponderance of the evidence does not support the judgment.

Joe Cole, Jr., who died May 11, 1968, and Bethel Cole (nee Williams) participated in a marriage ceremony on July 23, 1962, in Lee County, Arkansas, where appellee had resided all her life. She had previously been married to Jesse Ratliff on September 11, 1948, also in Lee County. She bore two children by Ratliff—one born before their marriage and one after. In March, 1949, they were separated. On October 29, 1950, Ratliff married Leona Morry in Lee County.

Appellee testified that she never filed a divorce suit against Ratliff. She thought that she was divorced when she signed a document labeled "Divorce Papers" brought her by Ratliff soon after their separation. Ratliff testified that he never got a divorce from appellee in Missouri, where he resided from the time he left Lee County in 1950 until 1959, and from 1962

until he testified on April 23, 1969, or in California, where he resided during the intervening period. He also testified that he never attempted to get a divorce anywhere except in Lee County, where he took steps to do so shortly after he and appellee were separated. He said that he thought he was divorced from appellee when he entered into the second marriage. He based his supposition on the fact that he had delivered some "divorce papers" signed by appellee and by two witnesses to a lawyer in Marianna, whose name he could not recall. Although he said the lawyer agreed to handle the matter from there on, stating that no further action by Ratliff was necessary, he also testified that the lawyer never advised him that he was divorced. He never saw a divorce decree. He said that he never paid the lawyer anything, but understood that his "foreman" would pay the necessary expense.

The Deputy Circuit Court Clerk having supervision of the records testified that she had searched them and found that no suit for a divorce had been filed by either Jesse or Bethel (Williams) Ratliff and that there was no decree divorcing them. Her method of searching the docket for evidence of the filing of a suit was so meticulous that it included checking the case numbers to determine that none was missing. Appellee admitted that she never received any papers evidencing a divorce. She said that Ratliff told her she was signing a divorce when he brought the papers to her.

The presumption of validity of a marriage is one of the strongest in our law. See *Sims* v. *Powell,* 245 Ark. 493, 432 S. W. 2d 838. Yet, if it is not overcome by evidence that there is no divorce decree of record in the only county in which either party ever made an attempt to institute proceedings, it becomes virtually an irrebuttable presumption, a result not indicated by any of our decisions. Appellee suggests two possibilities that she contends are not foreclosed by the evidence. The first is that the suit might have been instituted in the name of a guardian or next friend of Jesse Ratliff since he was only 18 years of age on the date of the

marriage to appellee. But the deputy clerk's testimony was that there was no record of a decree, and her check of the docket sheets for the filing of a suit is certainly very strong evidence that this suit was never filed in any form. The second possibility is based upon the premise that, immediately after the separation, Ratliff was in Cleveland, Ohio, for about three months and that his local attorney might have acted in association with another attorney in obtaining an Ohio divorce. The only testimony suggesting the possibility of Ratliff's having been in Ohio was that of appellee, who admitted that she did not know that Ratliff went there, but only knew that his father said that he did. Ratliff did not mention Cleveland in relating his movements after the separation. Even if he did go there, his testimony that he never attempted to get a divorce anywhere except in Lee County was unequivocal and eliminates this possibility.

A reversal would, then, be clearly indicated if appellee's principal reliance to sustain the judgment were not based upon Ark. Stat. Ann. § 55-109 (1947). This issue was raised in the trial court, but apparently was not considered by the probate judge. This statute provides:

> In all cases where any husband shall abandon his wife, or wife her husband, and resides beyond the limits of this State for the term of five (5) successive years, without being known to such person to be living during that time, their death shall be presumed, and any subsequent marriage entered into after the end of said five years (5) shall be as valid as if such husband or wife were dead.

There is evidence upon which it might be said that, after Ratliff's second marriage, he resided beyond the limits of this state for more than five consecutive years, without being known by appellee to be alive. The presumption of validity of the second marriage was overcome by proof that Ratliff was alive and that neither had obtained a divorce. *Watson v. Palmer*, 219 Ark. 178, 240 S. W. 2d 875. This being so, the burden of

proof of the facts necessary to bring appellee within the protection of the statute by a preponderance rested upon her. See *Baxter* v. *Baxter,* 232 Ark. 151, 334 S. W. 2d 714. The primary requisite to application of the statute was abandonment of her by Ratliff. She was required to show by a preponderance of the evidence that his separation from her was without consent or justification. *Watson* v. *Palmer,* supra. We do not find a preponderance of the evidence to sustain her burden.

Appellee testified that Ratliff just walked off and left her and went to his daddy's house (in Lee County) where he stayed for at least three months. He never visited the children or contributed to their support. She never sought to obtain any support for herself or her children, or made any inquiries about the granting of the divorce or provisions of the decree. Even though the circumstances might be said to make her failure to inquire of minor significance, the fact remains that she never made any inquiries of relatives of Ratliff, who had lived in the same county, or of anyone else as to his whereabouts, for support purposes or any other, even though Ratliff had lived in Lee County nearly all his life prior to 1950.[1] Appellee testified that her son had gone to St. Louis to visit her sister and called upon his father while there. The time of this visit is not fixed.

Appellee's conduct in signing the "divorce papers" brought to her by Ratliff was just as consistent with her consent to the separation as with abandonment. It is also consistent with recognition of grounds for divorce in favor of Ratliff. When asked if she knew what grounds for divorce Ratliff was using, she acknowledged that he was getting a divorce from her and that she had no objection. Ratliff's testimony indicated that the separation was by mutual agreement. Her

---

[1]Although there is a division of authority, some courts hold that one cannot be without knowledge whether a former spouse is living without having made appropriate inquiry. See *Alixanian* v. *Alixanian,* 28 Misc. Rep. 638, 59 N. Y. S. 1068 (1899); *Day* v. *Day,* 216 S. C. 334, 58 S. E. 2d 83 (1950). Contra, *Moody* v. *T. H. Hays & Sons,* 189 Tenn. 666, 227 S. W. 2d 20 (1950)

willingness for Ratliff to obtain a divorce without contest and her failure to ever make any effort to file a suit for divorce or alimony for herself tend to negate her present contention that his "walking off" was without either consent or justification, so that we cannot say that the evidence preponderates in her favor.

The judgment is reversed.