Mary Alice McDERMOTT v.
Herbert H. McADAMS, Executor

CA 79-321                          598 S.W. 2d 427

Court of Appeals of Arkansas
Opinion delivered April 16, 1980
Rehearing denied May 14, 1980
Released for publication May 14, 1980

1032

*Coleman, Gantt, Ramsey & Cox* and *Moses, McClellan, Owen & McDermott,* by: *Harry S. McDermott, Jr.,* for appellant.

*Griffin Smith* and *Gaston Williamson,* for appellee.

DAVID NEWBERN, Judge. This action arose in the course of probate of the estate of the late Senator John L. McClellan. It was initiated by a petition, filed with the probate court by the executor, which sought a determination of ownership of specified personal property in the possession of the Senator's daughter, Mary Alice McDermott, and some property in her name which was in the Senator's possession when he died. The petition asserted there was controversy whether the named items should be included in the estate. The court held the property was all part of the estate. We agree.

In 1963 the Senator created a trust of a $10,000 savings account. The trust instrument named Mary Alice McDermott as trustee and provided that other assets might be added to the corpus. The trust, by its terms, ceased to exist in 1973. During the ten year duration of the trust, the Senator transferred to "Mary Alice McDermott, Trustee," stock certificates in Home Theaters Corporation and certificates of deposit in Capital Savings & Loan, Heber Springs Savings & Loan, and Arkansas Valley Savings and Loan. As amended, the petition sought determination of ownership, as between the estate and the appellant, of all these items as well as shares in Metropolitan National Bank. The bank stock was

discovered in the Senator's lockbox after his death. The stock consisted of several certificates issued to Mary Alice McDermott, without designation as trustee. To one of the certificates was attached to a blank stock power signed by the appellant, Mrs. McDermott. It is undisputed that Senator McClellan supplied the purchase money for each of these items.

In the course of several hearings at which only lawyers for the executor and the appellant and other beneficiaries of the estate appeared, the appellant presented her affidavit in which she contended that, upon termination of the trust, Senator McClellan gave her the items mentioned as to which she had been designated "trustee" and that he had also given her the bank stock. At some point, the bank stock had split, and the added shares were issued in her name. She stated the bank stock certificates were found in the Senator's lockbox at his death because, at his request, she had agreed to sell some of the stock to persons selected by him. She had no recollection of signing the blank stock power.

The appellant's affidavit showed she had "returned" the passbook of the Capital Savings & Loan account to the Senator so he could "add . . . sums and otherwise handle this for my benefit," and at sometime the account had been converted to a certificate of deposit. She stated further that she had voted the Home Theaters stock, and those stock certificates had always been in her possession.

The appellee presented some of Senator McClellan's personal records showing that Senator McClellan paid income tax on the interest which was credited to the accounts represented by certificates with the savings institutions mentioned above. He also reported the dividends on the bank stock as income taxable to him. In her affidavit, the appellant said she sent the bank dividend checks to the Senator so that he might pay the income taxes. She said:

> It is and was my belief that the amounts represented by the checks mailed to him were used to pay income taxes, and amounts representing the

balance were given to me, although no exact formal accounting was furnished.

It is thus unclear whether any money sent by the appellant to the Senator was actually returned to her, as we cannot determine the meaning of the word "given" in this context.

In the affidavit, the appellant said her father's intent in making these substantial gifts to her was to see to it that his descendants by his first wife were adequately provided for, as he feared his spouse, now his widow, would not be as generous with them as with her own children.

## 1. Jurisdiction

### a. Basic Authority

The appellant contends the probate court has no authority to try title to property where the contest is between the estate and a "stranger," *i.e.,* one who is not a beneficiary. *Hilburn* v. *First State Bank of Springdale,* 259 Ark. 569, 535 S.W. 2d 810 (1976); *Snow* v. *Martensen,* 255 Ark. 1049, 505 S.W. 2d 20 (1974). The gist of the argument is that, while "Mary Alice McDermott" is a beneficiary of the estate, "Mary Alice McDermott, Trustee," is not, and these cases which would permit resolutions of title questions among the beneficiaries and the executor will not permit such resolutions between the estate and a person who, in her capacity as "trustee" is not a beneficiary.

While we agree that an action against an individual is different from an action against that person as trustee, we do not find that distinction important here. Although the designation of Mary Alice McDermott as "trustee" with respect to some of the assets in question is relevant to the question whether they were gifts to her after the trust terminated, this is not an action against her *as trustee.* Rather it is an action to determine whether the items are hers *as an individual,* as she asserts, or property of the estate. The question is not whether she holds the items as trustee but whether she owns them outright as opposed to the estate. Her response to

the evidence presented showing they are in the estate is that they were gifts to her.

We hold *Snow* v. *Martensen, supra,* authorizes the probate court to undertake resolution of this sort of title dispute between the estate and a beneficiary, Dictum in the *Hilburn* case repeats that proposition.

### b. Remedies

Upon oral argument of this case, the appellant urged that the probate court, unlike a court of equity, has no power to compel conduct and thus to require a party to convey property or, in the alternative, to appoint a commissioner to transfer the title. Although this point was not argued strongly in the appellant's brief, it was sufficiently mentioned. It was argued strongly in a brief submitted to the trial court. The application of the point to this case seems to be that to get the bank stock transferred out of the name of the appellant and into the name of the executor, and to get the theater stock and the certificates transferred from "Mary Alice McDermott, Trustee," to the executor will require an equitable remedy, and thus the probate court lacks jurisdiction.

We wholeheartedly agree that the probate court is not a court of equity and thus it may not grant purely equitable remedies, other than ones which may be authorized by statute. *Merrill* v. *Smith, Special Administrator,* 226 Ark. 1016, 295 S.W. 2d 624 (1956); *Arkansas Valley Trust Co.* v. *Young,* 128 Ark. 42, 195 S.W. 36 (1917).

It is troublesome to us to think that the distinction we retain between law and equity courts might make necessary a separate lawsuit in a case like this one just to get the same person who sits both as chancellor and as probate judge to give a traditionally equitable remedy as chancellor based on proof already before him as probate judge. A more egregious waste of time is hard to imagine. But the plain answer to the problem raised by this appellant is that the appellee has sought no equitable remedy, and the probate court did not propose to grant one. We presume that if an equitable

remedy is needed in the future, the parties will seek it in the proper court.

### 2. Adequacy of the Petition

The appellant contends the petition fails to state a cause of action. There is no requirement of which we are aware that a petition filed by an executor to settle questions of ownership between the estate and a beneficiary state a claim or cause of action in the sense that a complaint must. We can only assume the appellant makes this argument on the premise that she is a third party or stranger to the estate. We have disposed of that contention above in part 1.a. of the opinion.

### 3. Amendment of the Petition

The appellant argues the petition was amended on March 16, 1979, to add items to the list of those in controversy between the appellant and the estate after evidence had been taken on March 14, 1979, and that no such amendment should have been allowed.

The appellant cites no authority on this point. In our view, the executor could have amended to add items or could have filed fresh petitions at anytime alleging ownership or controversy among the parties with respect to items he claimed to be in the estate. The appellant was offered an opportunity to present evidence as late as July 13, 1979, which was the date of the final hearing on these matters. We find no prejudice to the appellant whatever and no authority which would have required foreclosing the amendment or filing of a petition as argued.

### 4. Statute of Limitations

The appellant contends that when the trust ended, December 31, 1973, by the terms of the trust instrument, the statute of limitations began to run in her favor. As pointed out by the appellee, we assume this argument applies only to the items held by the appellant as "Mary Alice McDermott, Trustee." The five year "catch-all" statute, *Ark. Stat. Ann., §* 37-213 (Repl. 1962), apparently is the one which would ap-

ply, and the appellant contends this action was not commenced within five years after the termination of the trust.

For the proposition that limitations begin to run when a trust terminates by its own terms, the appellant cites the following passage from Bogert, *Trusts and Trustees,* § 951, p. 475 (1962):

> If the period ends during which the trust was by its terms to continue, and there is no conduct on the part of the remaindermen which amounts to a consent that the former trustee holds for them under a new trust, or as a bailee, or in some other representative capacity, the possession of the old trustee automatically becomes adverse to that of those persons who are entitled to possession at the end of the trust, and the statute of limitations regarding an action to recover real or personal property begins to run.

The instrument pursuant to which Mrs. McDermott acted as trustee provided that upon termination of the trust, the corpus would be paid to Senator McClellan. He was the only remainderman. There was certainly conduct on his part which could be characterized as consent that the appellant hold under a new trust or as bailee or in some other representative capacity. There was no adverseness between the appellant and the Senator. His recording of the income from all but one[1] of these assets and payment of taxes on it is strong evidence he retained an interest in the property. Thus, the quoted passage does not apply.

The appellant cites other general authority for the same proposition as is contained in the passage from Bogert. Upon examination, however, we find it is subject to the same qualifications.

While we agree that a trustee of a discharged trust may hold adversely to the *cestui,* that clearly was not the case here.

---

[1] The record does not show income from the Home Theaters stock.

## 5. *Burden of Proof*

The appellant cites a number of cases showing that one who asserts that property in the possession of another is held in trust bears the burden of proof, *e.g., Bottenfield* v. *Wood,* 264 Ark. 505, 573 S.W. 2d 307 (1978); *Mulligan* v. *Payne,* 232 Ark. 922, 341 S.W. 2d 53 (1960). She contends the trial court erred in casting upon her the burden of showing the items in question were gifts to her.

We agree that if this were a case in which a third party or stranger to the estate were being sued by the executor to prove the corpus of a trust held in the name of the defendant were part of the estate, the burden might be as the appellant suggests, and the citations would be appropriate. However, this is not such a case. The appellee does not suggest these items are held in trust by the appellant. The parties agree the trust terminated in 1973, and the appellant says these items were gifts to her. Rather, the question is whether, after that date, the items in the name of "Mary Alice McDermott, Trustee," were the property of the Senator or the appellant.

In response to this point, the appellee argues there was no factual issue in the case, and thus the question who had the burden of proof is moot. While we agree the "evidentiary" facts seem undisputed, the "ultimate" fact, *i.e.,* whether there was a donative intent in leaving these items of the trust corpus in the possession of the appellant and purchasing stock in her name, must be regarded as disputed. In his later argument on the question of where the preponderance of the evidence lay, the appellee says:

> . . . [S]ince it is necessary for a trustee who claims trust property as a gift to establish the existence of the gift with the strongest of evidence, things that were necessary to do it *right* were never done and there is no indication that such an intention existed.

That statement indicates the appellee thought (and still thinks) the burden surely was on the appellant to prove the items were given to her.

In his final order, the trial court referred to the heavy "burden of a trustee who claims the subject matter of his trust property," thus the court apparently regarded this burden as one borne by the appellant.

The issue thus becomes whether, in proceedings before a probate court to ascertain the assets of the estate, a beneficiary who claims title to property which is asserted by the executor to be part of the estate bears the burden of proof. Although the appellant has cited cases, noted above, holding that one asserting property held by another is held in trust must prove it, no cases are cited on the issue as we have just stated it. We have found no helpful authorities on this very precise question.

Looking at other cases in which the question has been whether a decedent made a gift, the common thread seems to be that whoever claims the gift was made must prove it, regardless who initiated the inquiry. In *Bennett* v. *Miles,* 212 Ark. 273, 205 S.W. 2d 451 (1947), it was made clear, although not specifically stated, that an executor who did not list a certain asset as part of the estate had the burden of establishing that it had been the subject of a gift by the decedent. The question arose when the executor was faced with an exception to his accounting filed by one claiming as a pretermitted child. In *Baugh* v. *Howze,* 211 Ark. 222, 199 S.W. 2d 940 (1947), again without specifically saying so, our supreme court made it clear that one who asserts a decedent has made a gift must prove it even though he is not the "plaintiff" or moving party. There, a widow who was the sole beneficiary of her husband's will sought to recover some money he had placed with a friend to be distributed upon his death to his brothers and sisters. The court held the proof insufficient to show the decedent took the steps necessary to make the gift.

As a practical matter, there is good reason for this approach. If the burden were on the one claiming no gift was made, then the burden would be one of proving a negative proposition. In most cases that burden would be intolerable. We hold it was not incorrect for the trial court to place the burden on the appellant to show the Senator had made a gift

to her of the property she once had held in trust and property in her name but for which he paid and as to which he retained income and paid taxes.

### 6. Preponderance of the Evidence

We will not review in detail the evidence presented below. The case was submitted primarily on an affidavit by the appellant, discovery responses by her, and the Senator's personal records showing income receipts and tax payments with respect to the assets in question. No testimony was taken, and the entire "live" portion of the record consists of colloquy among the lawyers for the appellant and other beneficiaries, the court, and the lawyer for the appellee. The appellant and the other beneficiaries apparently were, for personal reasons, unwilling to testify. The court simply held the evidence insufficient to establish the claimed gifts, and we cannot say his ruling was against the preponderance of the evidence.

In this connection, quotation from the final paragraph of the opinion in *Baugh* v. *Howze, supra,* is appropriate.

> . . . [T]he question here simply stated is, do the facts show a gift of the $10,000 to Dr. Howze's brothers and sisters? Conceding that Dr. Howze wanted this money to go to his sisters and brothers after his death, still unless he took proper or legal steps to carry out such intention, this court cannot act for him and give legal effect to the donor's wishes when the donor himself has failed to comply with the essential requirements necessary to effectuate the gift. [211 Ark. at 228]

Had the senator wished to make gifts of the items the appellant once held in trust, it would have been a simple matter to have had them reissued to her without the word "trustee." Conceding he wanted the items to go to her, he failed to take a step which we regard as essential in these circumstances in view of the strong evidence needed to show that one named as "trustee" ceases to act in that capacity with respect to property which remains in her possession and which she asserts was given to her. In *Young* v. *Barde,* 194 Ark.

416, 108 S.W. 2d 495 (1937), our supreme court held that an alleged gift to a person who occupies a confidential or fiduciary relationship would be scrutinized with the most "jealous care," quoting *Gillespie* v. *Holland,* 40 Ark. 28 (1882). The *Young* case was cited with approval in *Barrineau* v. *Brown,* 240 Ark. 599, 401 S.W. 2d 30 (1966).

The preponderance of the evidence also supports the decision with respect to the bank stock. We cannot say the lower court erred in finding this stock which was in the Senator's possession at his death accompanied by a blank power was to be included in his estate, especially in view of his records showing receipt of dividends and taxes paid on them by him. The evidence to the contrary was not "clear and convincing." *Mohr* v. *Hampton,* 238 Ark. 393, 382 S.W. 2d 6 (1964).

Affirmed.

HOWARD, J., dissents.

GEORGE HOWARD, JR., Judge, dissenting. The majority found that the trust of the late Senator McClellan:

"[B]y its terms, ceased to exist in 1973 . . . the instrument pursuant to which Mrs. McDermott acted as trustee provided that upon termination of the trust, the corpus would be paid to Senator McClellan. He was the only remainderman. There was certainly conduct on his part which could be characterized as consent that the appellant hold under a new trust or as bailee or in some other representative capacity. . . ."

The majority further stated:

"While we agree that an action against an individual is different from an action against that person as trustee, we do not find that distinction important here. . . . The question is not whether she holds the items as trustee, but whether she owns them outright as opposed to the estate. Her response to the evidence

presented showing they are in the estate is that they are gifts to her."

The pivotal issue in the case is not, as perceived by the majority, whether the Probate Court had jurisdiction to determine title to property, purportedly in possession of the appellant belonging to the estate of the late Senator John L. McClellan, but whether the Probate Court has jurisdiction to require a trustee to render an accounting of her stewardship.

The trust agreement, which was executed by the late Senator McClellan and appellant on December 31, 1963, while stating the trust would terminate ten years from the date of its execution provides:

"The trustee, without regard to any legal restriction otherwise applicable to trustees, shall be entitled:

(d) to continue to have or *exercise after the termination of the trust in whole and in part and until the final distribution thereof, all the* titles, powers, discretions, rights and duties conferred or imposed upon the trustee or by this agreement during the existence of the trust.

. . .

"The trustee may at any time render an account of her proceedings to the grantor, or, after the death of the grantor . . ." (Emphasis added)

Appellee's petition filed in the Probate Court, purportedly raising an issue involving the title to the assets in the possession of appellant, makes the following pertinent and dispositive allegations:

"The executor states that there are unsolved controversies arising out of whether certain items or property of the estate are the individual property of Mary Alice McDermott. . . .

"Petitioner attaches hereto a copy of a trust ex-

ecuted by decedent in 1963 naming Mary Alice McDermott as trustee. The trust expired ten years after its inception.

" . . . the executor prays that the court hold a hearing . . . to determine ownership of the above items."

It is plain that the relief sought by appellee in the trial court against appellant is in her capacity as trustee and, accordingly, the Probate Court was without jurisdiction to entertain the matter.

It is well settled that the question of whether a court of equity has jurisdiction over a subject matter of an action is determined from the allegations of the petition. *Scroggins* v. *Bowen,* 249 Ark. 1155, 464 S.W. 2d 79; *Graysonia N. & A. R. Co.* v. *Newberger Cotton Co.,* 170 Ark. 1039, 282 S.W. 975.

Moreover, exhibits to a petition control its averments and the nature of the cause of action. *Moore* v. *Exelby,* 170 Ark. 908, 281 S.W. 671.

It is clear that the assets claimed by the appellee were purportedly delivered to appellant in her capacity as trustee and not in her individual capacity.

An action for the discovery and recovery of trust assets is peculiarly an equitable proceeding since a law court is not endowed with the machinery to adjust the rights and equities involved. *Ferguson* v. *Rogers,* 129 Ark. 197 (1917); *Spradling* v. *Spradling,* 101 Ark. 451, 142 S.W. 848; *Blanton* v. *First Nat'l Bank,* 136 Ark. 441, 206 S.W. 745.

It is beyond debate that only a person occupying the position of trustee can be required to render an accounting of his administration of the trust estate. It is clear from the exhibit, the trust agreement, attached to appellee's petition, that it was the intention of Senator McClellan that the appellant should be afforded the discretion to administer the trust even after the expiration date contained in the agreement; and that the trustee may at any time render an accounting, even after the death of the Senator.

I would reverse and remand the case to the Probate Court of Pulaski County to be transferred to the Pulaski County Chancery Court. Accordingly, I dissent.