Mae Ireland BROWN v. Steve IMBODEN, Administrator of the Estate of Bill Brown, et al.

CA 88-274                                    771 S.W.2d 312

Court of Appeals of Arkansas
En Banc
Opinion delivered June 7, 1989

128

*Charles R. Easterling*, for appellant.

*Howard & Howard; Collier & Jennings*, for appellee.

JAMES R. COOPER, Judge. The only issue in this appeal from the Craighead County Probate Court is whether the court erred in finding that the appellant, Mae Ireland Brown, is not the legal surviving spouse of the decedent, Bill D. Brown. We reverse and remand.

The parties stipulated to the facts involved in this case. Bill Brown married Roberta Barksdale in 1963, and they were divorced in 1974. They had two children, Wayne and Rickey Brown. Roberta, as guardian of Rickey Brown, is an appellee in this appeal.

After his divorce from Roberta, Bill married Brenda Brown. They later separated and Brenda filed for divorce in March 1978. There were no children born of this union. On April 14, 1980, the Craighead Chancery Court dismissed the divorce action for lack of prosecution.

The appellant, Mae Ireland Brown, believing Bill was divorced, married Bill on March 30, 1979. Mae Brown testified that in January or February of 1981, she was contacted by Brenda who informed her that there had been no dissolution of the marriage between Brenda and Bill. Mae stated that she immedi-

ately left Bill and did not live with him again until they were remarried on June 27, 1981.

On February 18, 1981, the chancellor set aside the April 14, 1980, order dismissing Brenda's 1978 petition for divorce and on February 27, 1981, Bill filed an answer and a counterclaim seeking a divorce from Brenda. A hearing was held on June 8, 1981, on the divorce complaint. Bill Brown, Mae Ireland Brown, Brenda Brown, and Mae Brown's daughter were present. Mae testified that she attended the hearing at Bill's insistence, and that at the conclusion of the hearing the trial judge stated that they were "as single people." However, the divorce decree was not filed with the chancery clerk until July 1, 1981, four days after the appellant and Bill had remarried. Therefore, the decree did not become effective until July 1, 1981, and the June 27, 1981, marriage between Bill and Mae was invalid. *See Standridge* v. *Standridge*, 298 Ark. 494, 769 S.W.2d 12 (1989).

Bill died intestate on December 17, 1987. After a hearing to determine heirship, the probate court found that Mae was not the legal surviving spouse of Bill Brown and that their purported marriage on June 27, 1981, was void *ab initio*. On appeal, the appellant contends that the appellees should have been estopped from questioning the validity of her marriage to Bill. We agree.

Initially we note that, although the appellant never specifically pled estoppel, the record clearly shows that the case was tried on an estoppel theory by implication. The relevant dates of the marriages and divorces involved were stipulated to by both parties, and the appellant testified at length regarding her reliance on Bill Brown's assertions that he was in fact divorced. Moreover, the appellees, in their brief, do not assert or rely upon any failure on the part of the appellant to raise estoppel as an affirmative defense. Under these circumstances, we think that the issue was tried by the implied consent of the parties, and we treat the pleadings as amended to conform to the proof. Ark. R. Civ. P. 15(b).

As stated in *Fox* v. *Fox*, 247 Ark. 188, 444 S.W.2d 865 (1969):

> The theory [of estoppel] is that the marriage is not made valid by reason of the estoppel but that the estopped person

> may not take a position that the divorce or latter marriage was invalid.
>
> . . .
>
> [T]he defendant by reason of his conduct will not be permitted to question its validity or the divorce; so far as he is concerned, he and the plaintiff are husband and wife.

247 Ark. at 199. In the present case, it was the decedent who initiated the remarriage of himself and the appellant, and it was at his insistence that she attend the divorce hearing. The evidence shows that the appellant relied, in good faith, on the validity of Bill's divorce from Brenda and relied in good faith on the validity of her marriage to Bill for almost seven years. On our de novo review, *Taylor* v. *Hill*, 10 Ark. App. 45, 661 S.W.2d 412 (1983), we find that Bill was at least culpably negligent in not determining that his divorce decree was final before initiating his remarriage with the appellant and that he would have been estopped to deny that the decree was final. *See J.F. Hasty & Sons* v. *Hampton Stave Co.*, 80 Ark. 405, 97 S.W. 675 (1906).

■■ By this holding, we do not declare the validity of common-law marriage in Arkansas. A legal common-law marriage cannot be entered into in Arkansas, nor can one be created by estoppel, but equity can, and we hold that it does, under the facts in this case, require that the parties be estopped from denying the validity of a marriage. *Fox, supra.* Although a probate court is without jurisdiction to grant equitable relief, it may apply equity doctrines in cases properly before it. *Hilburn* v. *First State Bank*, 259 Ark. 569, 535 S.W.2d 810 (1976); *McDermott* v. *McAdams*, 268 Ark. 1031, 598 S.W.2d 427 (Ark. App. 1980). The Supreme Court's opinion in *Standridge, supra*, is not controlling in the case at bar because, in *Standridge*, no issue of estoppel was present: both parties in that case were aware that their marital status was questionable, to the extent that they made several visits to Oklahoma in a futile attempt to create a valid common-law marriage. In contrast, the appellant in the case at bar was unaware of any possible invalidity and, as we have noted, Bill Brown obtained her presence at the divorce hearing with the specific purpose of inducing her to marry him.

■ We hold that the estate and the heirs of Bill Brown are

estopped from challenging the validity of Bill's marriage to the appellant because they stand in privity to the decedent. Because Bill himself would be barred from challenging the validity of the marriage, his heirs and his estate are in no better legal position to challenge the validity of Bill's marriage to the appellant. *See Simmons* v. *Simmons*, 203 Ark. 566, 158 S.W.2d 42 (1942) and *Ripley* v. *Kinard*, 155 Ark. 172, 244 S.W. 3 (1922).

We reverse and remand to the Craighead Probate Court to enter orders not inconsistent with this opinion.

Reversed and remanded.

MAYFIELD and JENNINGS, JJ., concur.

CORBIN, C.J., and CRACRAFT, J., dissent.

JOHN E. JENNINGS, Judge, concurring. I concur but would not reach the issue of estoppel. In my view the marriage between Bill and Mae Ireland Brown was valid. Two rules of civil procedure are involved here. Ark. R. Civ. P. 58 provides:

> Every judgment or decree shall be set forth on a separate document. A judgment or decree is effective only when so set forth and entered as provided in Rule 79(a). Entry of judgment or decree shall not be delayed for the taxing of costs.

Ark. R. Civ. P. 79(a) (now Arkansas Supreme Court Administrative Order 2) provides, in part:

> All papers filed with the clerk, all process issued and returns thereon, all appearances, orders, verdicts and judgments shall be noted chronologically in the dockets and filed in the folio assigned to the action and shall be marked with its file number. These entries shall be brief, but shall show the nature of each paper filed or writ issued and the substance of each order or judgment of the court and of the returns showing execution of process. The entry of an order or judgment shall show the date the entry is made.

In the case at bar the decree of divorce is dated June 8, 1981. It was filed marked on July 1, 1981, and the docket entry made in connection with the decree was made on that date. It reads

"Decree filed and recorded." We have no reason to assume that the decree was reduced to writing on any date other than June 8, 1981. There is no indication in this record it was entered nunc pro tunc.

In *Standridge* v. *Standridge*, 298 Ark. 494, 769 S.W.2d 12 (1989), the issue was the validity of a divorce, and consequent validity of a subsequent marriage. In *Standridge*, the chancellor heard divorce proceedings between Terry and Annie Thacker on October 5, 1984. He made a docket entry on that date, "Decree — A little unusual but it may work." The decree was filed on October 24, 1984. In the meantime, on October 7, 1984, Annie Thacker had participated in a marriage ceremony with Harold Standridge. From a reading of the opinion in *Standridge* it is not clear when the decree of divorce was reduced to writing, i.e., in the language of Rule 58, when it was "set forth on a separate document." In *Standridge*, the supreme court said, "Since the adoption of the rules, this court has made it clear that a judgment or decree may not be effective until it has been 'entered' as provided in Rules 58 and 79." The court used essentially the same language in *Childress* v. *McManus*, 282 Ark. 255, 668 S.W.2d 9 (1984) ("ARCP Rule 58 plainly states a decree is effective only when entered as provided by Rule 79(a)").

In my judgment, however, this was not the holding in *Standridge*. In that case the supreme court said:

> Annie argues the *Childress* case and cases similarly decided by our court of appeals are distinguishable because they involve the death of a party, which is not involved here, and because they involve situations where there were or may have been issues left unresolved after announcement of the decree which, she contends, is not the case here. We see no significant difference between the case where a death occurs before entry of a decree and one where remarriage occurs before entry of a decree. *In each case, the question is the same. Was the announcement of the divorce from the bench sufficient to effect the divorce? We again say no.* (Emphasis added.)

In my view this was the issue decided in *Childress* and in *Standridge*. As the majority in *Standridge* noted, these holdings effectively overruled *Parker* v. *Parker*, 227 Ark. 898, 302 S.W.2d

533 (1957).

After stating the issue and deciding it, the majority in *Standridge* went on to explain the rationale for its holding.

Nor are we persuaded by the idea that in those cases there may have been issues remaining to be resolved. Although in the case before us now the support and property issues seemed to have been settled through Annie's testimony at the divorce hearing as to the parties' agreement, there is no telling what sort of objections one or the other of them might have upon seeing the decree in writing and being asked to approve it before entry. Our experience tells us there may always be outstanding issues until a written document is made the final instrument of the divorce and the divorce is made final at some definite point.

The manner in which the court posed the issue in *Standridge* leads me to the conclusion that the "definite point" is the point at which the divorce decree is reduced to writing in a "separate document", signed by the trial court. An announcement from the bench or an entry on the docket, or both, would be insufficient.

Other language in *Standridge* leads me to this conclusion. The court expressly noted that Administrative Order 2 provides merely for the ministerial act of filing. Although the holding in *Parker* v. *Parker, supra*, has been overruled by the court's decisions in *Childress* and *Standridge*, the distinction drawn in *Parker* between judicial and ministerial acts remains a valid one. I am not yet persuaded that the supreme court intends that the validity of a divorce, and the consequent validity of a subsequent marriage, should turn on the date of the performance of a ministerial act. This is particularly so in view of the long-standing presumption against deliberate bigamy, *Bruno* v. *Bruno*, 221 Ark. 759, 256 S.W.2d 341 (1953), and the common law presumption of the validity of the second marriage, *Cole* v. *Cole*, 249 Ark. 824, 462 S.W.2d 213 (1971).

Our supreme court has stated that, because our procedural rules are patterned after the federal rules, we should look with persuasion upon how the federal courts have interpreted their corresponding rules. *Robinson* v. *Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987). Although *Banker's Trust Co.* v. *Mallis*, 435

U.S. 381 (1978), is clearly not directly in point here, some of the language used by the United States Supreme Court is relevant. In discussing Rule 58 the Court said:

> It must be remembered that the rule is designed to simplify and make certain the matter of appealability. It is not designed as a trap for the inexperienced. . . . The rule should be interpreted to prevent loss of the right of appeal, not to facilitate loss.

> The Federal Rules of Civil Procedure are to be "construed to secure the just, speedy, and inexpensive determination of every action."

* * *

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities. (Citations omitted.)

If, in the case at bar, the chancellor signed a written decree of divorce on June 8, 1981, the subsequent remarriage of Bill Brown to Mae Ireland Brown was valid, notwithstanding the delay in the performance of any ministerial act by a clerk.

MELVIN MAYFIELD, Judge, concurring. I concur in the opinion written by Judge Cooper. On our de novo review, I think the evidence is clear that the decedent, Bill Brown, induced the appellant, Mae Ireland Brown, to marry him again after he insisted that she attend the court hearing at which the judge stated that Bill and Brenda Brown were divorced.

While Bill may not have actually known that his divorce was not final at the time he married Mae the second time, I think he was guilty of willful disregard of her interest by not making sure that the decree was final before he married her again. It was his divorce and he knew she did not want to live with him until he had divorced Brenda and he and Mae were married again. By remarrying Mae after insisting that she come to court and see the judge grant him a divorce from Brenda, I think Bill would have been estopped to deny that his divorce from Brenda was not final at that time.

In *Bethell* v. *Bethell*, 268 Ark. 409, 597 S.W.2d 576 (1980), the court said:

> A party who by his acts, declarations or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled.

268 Ark. 424 (citations omitted).

Because Bill Brown would have been estopped to deny that his divorce was final at the time he remarried Mae, under the cases cited by Judge Cooper, Bill's heirs and estate are also estopped to make such denial.

Not only is the doctrine of estoppel a sufficient basis for upholding the validity of Mae's marriage to Bill, I think it is the only basis. It seems to me that the case of *Standridge* v. *Standridge*, 298 Ark. 494, 769 S.W.2d 12 (1989), makes it abundantly clear that a decree is not effective until properly entered. As the majority opinion in that case states, "since the adoption of the rules" the Supreme Court has made it clear that a judgment or decree is not effective until it has been entered as provided by the rules of civil procedure. It is hard for me to believe that any lawyer admitted to practice when the rules were made effective on July 1, 1979, has not known ever since then that decrees and judgments have to be entered before they are effective. And lawyers admitted since then should have known this. At least the rules, the appellate courts, and countless seminars have made it clear. Not only does the concept affect the time to appeal, it affects liens, divorces, interest rates, property interests, and many other things. It is time to accept the idea that decrees and judgments in civil cases are no longer effective—even for selected purposes—when "rendered."

GEORGE K. CRACRAFT, Judge, dissenting. I respectfully dissent. The law of this State has been for many years that a marriage entered into by one not divorced from a living spouse is void, even though one of the parties to the marriage enters into it

in good faith. *See Cooper* v. *McCoy*, 116 Ark. 501, 173 S.W. 412 (1915); *Evatt* v. *Miller*, 114 Ark. 84, 169 S.W. 817 (1914). This rule was reaffirmed by the Arkansas Supreme Court as recently as May 1, 1989, in *Standridge* v. *Standridge*, 298 Ark. 494, 769 S.W.2d 12 (1989). That case held that the *rendition* of divorce is not enough; it is not effective until reduced to writing and entered as required by Ark. R. Civ. P. 58 and Administrative Order 2.[1] In these two respects, *Standridge* stands on all fours with the case at bar.

The majority opinion would evade the application of this established rule by applying the novel principle announced in *Fox* v. *Fox*, 247 Ark. 188, 444 S.W.2d 865 (1969). I think this approach is wrong for at least two reasons.

In the first place, estoppel is an affirmative defense which must be specifically pled. Ark. R. Civ. P. 8(c). The abstract fails to disclose that this issue was ever pled, raised, or argued in the trial court, and it cannot be raised for the first time on appeal. *Beeson* v. *Beeson*, 11 Ark. App. 79, 667 S.W.2d 368 (1984); *Sheffield* v. *Strickland*, 268 Ark. 1148, 599 S.W.2d 422 (Ark. App. 1980).

Secondly, any similarity between the material facts in *Fox* and those in this case simply escapes me. In *Fox*, a divorced husband induced his former wife to resume the marital state without remarriage by willfully misrepresenting to her that he had seen their attorney and had their divorce decree set aside. Although he knew that the divorce had not been set aside, the wife did not. Relying on his misrepresentation, she believed in good faith that she was legally married to him and resumed the marital relationship. He made no mention of this deceit until he pled the divorce decree as a bar to a second action for divorce and property settlement twenty years later. In denying the husband's plea that he was not in fact married to her, the court said:

> The evidence of record in the case at bar sustains

---

[1] Administrative Order 2, which superseded Ark. R. Civ. P. 79, was adopted by per curiam opinion of the Arkansas Supreme Court on December 21, 1987, and became effective March 14, 1988, subsequent to the "divorce" and marriage involved herein. In all ways pertinent to the issues of this case, however, the order and former rule are identical.

Dorothy's contention that she lived with Walter as his wife for more than twenty years under the mistaken belief, *brought about by Walter's deceit*, that the divorce had not become final or that the decree had been set aside and that she and Walter were still legally married during the entire period they lived together. There is no evidence in the record inconsistent with Dorothy's belief that she was legally married to Walter, and Walter has offered no proof tending to show that Dorothy did not believe they were still legally married, except her long toleration of his own philandering activities.

A legal common-law marriage cannot be entered into in Arkansas, nor can one be created by estoppel, but equity should, and we hold that it does, *under the facts in this case*, require that Walter be estopped to deny that the divorce decree was set aside or "thrown out" before it became final, and he is estopped to deny such rights as Dorothy would be entitled to had a divorce decree never been entered. In other words, we simply hold that as between Walter and Dorothy, Walter is estopped from setting up the prior divorce as a defense to Dorothy's petition, and that Dorothy is entitled to exactly the same property rights, alimony and attorney's fees as she would be entitled to had there never been a divorce.

*Fox*, 247 Ark. at 199-200, 444 S.W.2d at 871 (emphasis added).

Estoppels rest on the principle that a party may not assert a right he has obtained by knowingly inducing another to in good faith change his position to his detriment. To establish estoppel, one must show that the party sought to be estopped knew the facts and intended that his conduct be acted upon, and that the party seeking estoppel was ignorant of the true facts and relied upon the other's conduct to his injury. *Askew Trust* v. *Hopkins*, 15 Ark. App. 19, 688 S.W.2d 316 (1985); *First State Bank* v. *Phillips*, 13 Ark. App. 157, 681 S.W.2d 408 (1984).

In *Fox*, the court found that the husband had willfully deceived the wife by misrepresenting the facts to her and that she had acted in the good faith belief that he had told her the truth. Here, there is no evidence to support a finding that either party did not act in the good faith belief that they were free to marry or

that either knew the divorce was invalid. There is nothing in the record I reviewed to suggest that either party relied on any statements other than the one made by the chancellor from the bench that Bill Brown and his former wife were "single people." The majority does not seem to base its application of the doctrine of estoppel on any knowledge of the true facts by Mr. Brown but on its *de novo* finding that he "was at least culpably negligent in not determining that his divorce decree was final before initiating his remarriage." The basis for finding him more negligent than appellant in their reliance on the judge's pronouncement or the lawyers' duty to effect a final decree also escapes me. There is simply nothing in the record I reviewed to sustain such a finding or conclusion.

I would follow the decision in *Standridge, supra*, and affirm.

Corbin, C.J., joins in this dissent.