Charlie Ike HIGGINS *v.* Katie HIGGINS

CA 79-121                                588 S.W. 2d 454

Opinion delivered October 3, 1979
[Rehearing denied November 5, 1979]
and released for publication November 5, 1979

*Kenneth C. Coffelt,* for appellant.

*Gibson & Crow,* for appellee.

MARIAN F. PENIX, Judge. This case was appealed to the Arkansas Supreme Court and by that court assigned to the Arkansas Court of Appeals pursuant to Arkansas Supreme Court Rule 29(3).

This appeal arises from an award of separate maintenance to a woman the defendant says was never his lawful wife.

Charlie Ike Higgins and Katie Higgins were married in Oklahoma on April 4, 1975. They lived together in Benton, Arkansas for two and one half years. Charlie then left Katie, stating that he just did not wish to be tied to one woman. Katie filed for divorce but dismissed the suit when Charlie returned. They lived together for three months before separating again. Katie then filed this suit seeking separate maintenance and support.

At the trial, the defendant introduced a divorce decree granted to Margie Higgins on April 29, 1975 from Charlie Ike Higgins. The defendant contends that since there had been no divorce from his first wife at the time of his marriage to the

plaintiff, the marriage was absolutely void. Hence, no award of separate maintenance could be made, there being no marital status from which to award it. The chancellor, declining to accept the defendant's position, ordered the defendant to pay the plaintiff $241 per month in support.

> The Court is going to grant separate maintenance. These parties have lived together as man and wife, even though through a technicality the defendant herein was not divorced until some few days after the marriage. So, at least they've held themselves out as man and wife and lived together as man and wife, and it's the Court's finding that he is obligated to support her. . .

Arkansas does not recognize common law marriage. *Furth* v. *Furth,* 97 Ark. 272, 133 S.W. 1037 (1911). The mere fact that the parties held themselves out as husband and wife will not support an award of separate maintenance. This is not the situation in this case. We hold the husband to be estopped from asserting the invalidity of the marriage to Katie. We believe the holding and principles enunciated in *Fox* v. *Fox*, 247 Ark. 233, 444 S.W. 2d 865 (1969) are persuasive. In *Fox*, a husband and wife were married for seven years. The wife was awarded an uncontested divorce in May of 1945. Two months later, the husband asked for a reconciliation. The couple resumed living together. The husband informed his wife that he had had the divorce set aside. The couple remained together until the wife filed suit for divorce some 22 years later. At the trial, the husband stated that they had never remarried after the divorce. Hence, there was no marriage to dissolve and no marital contract from which to award alimony. The Arkansas Supreme Court found that equity demanded the husband be estopped from asserting the invalidity of the marriage.

> . . .There is no evidence in the record inconsistent with Dorothy's belief that she was legally married to Walter, and Walter has offered no proof tending to show that Dorothy did not believe they were still legally married, except her long toleration of his own philandering activities.

A legal common-law marriage cannot be entered

into in Arkansas, nor can one be created by estoppel, but equity should, and we hold that it does, under the facts in this case, require that Walter be estopped to deny that the divorce decree was set aside or "thrown out" before it became final, and he is estopped to deny such rights as Dorothy would be entitled to had a divorce decree never been entered.

Further support for this position is given in the language quoted in *Fox* from the California case *Spellens* v. *Spellens*, 49 Cal. 2d 210, 317 P.2d 613 (1957).

> The theory is that the marriage is not made valid by reason of the estoppel but that the estopped person may not take a position that the divorce or later marriage was invalid . . . we think it may now be stated that the general public policy in this jurisdiction, as judicially interpreted, no longer prevents application in annulment actions of the laches and estoppel doctrines in determining the effect to be given such divorce decrees . . .Rather it is that defendant by reason of his conduct will not be permitted to question its validity or the divorce; so far as he is concerned, he and plaintiff are husband and wife . . . It may be noted also that we are not recognizing a common-law marriage which does not exist in this state for the theory is that the marriage is not validated; it is merely that defendant cannot contest it.

Charlie Higgins, by reason of his conduct, is estopped to assert the voidness of his marriage to Katie.

The defendant has argued that Katie knew of his previous marriage and the fact that it had not been legally dissolved. A marriage is presumed to be valid. The burden of proof is on the one attacking the validity of the marriage. There is a presumption when a man and woman are married, and one has a living spouse, that the former spouse has been divorced at the time of the marriage. *Lathan* v. *Lathan,* 175 Ark. 1037, 1 S.W.2d 67 (1928); *Estes* v. *Merrill,* 121 Ark. 361, 181 S.W.2d 136 (1951). This presumption also has a corollary. It is presumed that the parties entered the marriage in good faith. The defendant contends Katie Higgins has not

proven she did not know he was still lawfully married to Margie Higgins. This was not her burden. *Fox,* supra. No evidence was introduced by the defendant to show Katie's lack of good faith.

The defendant cites *Bruno* v. *Bruno,* 221 Ark. 759, 256 S.W.2d 341 (1953). *Bruno* is distinguishable from the case at hand. The opinion reflects that the record was replete with evidence that both parties knew of the previous marriages of each spouse and the fact that the divorce had not been granted.

We are aware of cases which have denied the second wife an interest in the estate of her deceased "husband". *Cooper* v. *McCoy,* 116 Ark. 501, 173 S.W. 412 (1915); *Evatt* v. *Miller,* 114 Ark. 84, 169 S.W. 817 (1914). These cases, however, can be distinguished. In each instance, a *third party* attacked the validity of the marriage for the purpose of denying the second wife an interest in the estate. The husband was not the party using the invalidity of the marriage as a shield.

Decree affirmed.