# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3133EM

_____

Sharon Everetts,                                    *
                                                    *
            Appellant,                              *
                                                    *   On Appeal from the United
      v.                                            *   States District Court
                                                    *   for the Eastern District
                                                    *   of Missouri.
Kenneth S. Apfel, Commissioner,                     *
Social Security Administration,                     *
                                                    *
            Appellee.                               *

_____

Submitted: February 14, 2000
Filed: June 5, 2000

_____

Before RICHARD S. ARNOLD, HEANEY, and LOKEN, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Sharon Everetts appeals the denial of Widow's Benefits under the Social Security Act. The central issue in this case is the Social Security Administration's treatment of a Missouri annulment decree. We hold that the Social Security Administration properly applied Missouri law, and we therefore affirm the judgment of the District Court,[1] which upheld the Social Security Administration.

_____

[1]The Hon. Charles A. Shaw, United States District Judge for the Eastern District of Missouri.

I.

The important facts are not in dispute. The plaintiff[2] was raped in September of 1953. Although she was fifteen and therefore not capable of marrying without parental consent, her mother signed a consent form, and encouraged or forced her to marry her rapist, Joseph Everett. The plaintiff married Mr. Everett. However, Mr. Everett left town the next day, never to be seen or heard from again. The plaintiff continued to use the name "Everetts," for herself and for all of her subsequently born children.

In February of 1983, the plaintiff went through a marriage ceremony with the wage earner, Mitchell Reid. In 1990, Mr. Reid died. In March of 1996, the plaintiff attempted to get her marriage to Mr. Everett annulled. The Circuit Court of the City of St. Louis, in an ex parte proceeding, declared that the plaintiff's 1953 marriage to Mr. Everett was "annulled as though never in force." Further, the "Judgment and Decree of Annulment" declared the 1953 marriage "null and void and of no force and effect of [sic] initio." In April of 1996, the plaintiff initiated the instant claim for Widow's Insurance Benefits on Mr. Reid's record.[3]

The Administrative Law Judge denied the plaintiff's claim, reasoning that she did not have a valid marriage to Mr. Reid. The ALJ found that the plaintiff's prior marriage to Mr. Everett was not annulled until after her marriage to the wage earner, and that under Missouri law the annulment of the marriage was effective only from the date of the annulment. The Appeals Council denied the plaintiff's request for review, and the District Court granted the defendant's motion for summary judgment.

---

[2]The term "plaintiff" refers to Josephine Everetts, the original claimant. Ms. Everetts died in November 1997. Sharon Everetts is her daughter, and is a substitute party for Josephine Everetts. See 42 U.S.C. § 404(d).

[3]Mr. Reid's death certificate lists a "Josephine Johnson" as his spouse. The plaintiff's maiden name was Johnson.

II.

To receive Widow's Benefits, the plaintiff must be the widow of the wage earner. The Social Security Act defines a "widow" as someone married to the wage earner for a period of not less than nine months immediately prior to the day on which the wage earner died. 42 U.S.C. § 416(c)(5). Under the Social Security Act, the plaintiff would be considered the wife of the wage earner if the courts of Missouri (the state where both the plaintiff and the wage earner were domiciled) would find that the plaintiff and the wage earner were validly married at the time the wage earner died. 42 U.S.C. § 416(h)(1)(A)(i).

In this case, the validity of the plaintiff's marriage to the wage earner depends on the status of her first marriage to Mr. Everett. It is undisputed[4] that the plaintiff had gone through a marriage ceremony with Mr. Everett at the time of her purported 1983 marriage to the wage earner. If the marriage to Mr. Everett was valid, the plaintiff lacked the legal capacity to marry the wage earner. However, in 1996 the plaintiff had her marriage to Mr. Everett annulled.

Under Missouri law, an annulment is a judicial declaration that no marriage existed. Missouri law distinguishes between "void" and "voidable" marriages. A void

---

[4]A word of explanation is appropriate in light of the statements made in the dissenting opinion. The ALJ, after evaluating both the evidence and the plaintiff's credibility, found that the plaintiff was ceremonially married to Mr. Everett on September 10, 1953. The District Court evaluated the record and did not disturb this finding. The plaintiff has not challenged this finding in her brief in this Court, or in the District Court. Even if the plaintiff were to do so, we would hold that this factual finding has adequate support in the record. Although the plaintiff testified before the ALJ that there was no marriage ceremony and that she did not believe she was married to Mr. Everett, we agree with the ALJ that her subsequent actions, including listing Mr. Everett as her spouse on an application for Social Security benefits, undermine her credibility on this issue.

marriage is invalid from its inception, because the parties lacked the capacity to contract under state law, or are related in a prohibited manner. See Mo. Ann. Stat. § 451.020. In contrast, a voidable marriage results from fraud, error, duress, or other imperfect consent. See Glass v. Glass, 546 S.W.2d 738, 740 (Mo. App. 1977). The effect of the annulment decree varies according to whether the marriage is void or voidable. A voidable marriage is valid until set aside by a decree of annulment; in contrast, a void marriage is null from inception.

The plaintiff argues that the 1996 annulment decree, which states that her marriage to Mr. Everett was "annulled as though never in force," and "null and void and of no force and effect of [sic] initio," is a state court determination that the plaintiff's marriage to Mr. Everett was void, and not merely voidable. Certainly, the language of the decree indicates that this is so. However, the only grounds for the annulment in the record are duress. Under Missouri law, duress leads to a voidable, not void, marriage. Glass, 546 S.W.2d at 740.

Therefore, we are faced with the following question: what effect would a Missouri court give to the annulment decree, which on its face reads "void," yet which deals with a type of marriage (one entered into under duress) that is voidable. Would the Missouri court decline to look beyond the four corners of the document, and be content that void means void, or would it look at the applicable law, and realize that void probably meant voidable? The answer to this question is crucial to the outcome of this case. If a Missouri court were to treat the marriage as void, the annulment decree would relate back and validate the plaintiff's second marriage. See, e.g., Eyerman v. Thias, 760 S.W.2d 187, 189 (Mo. App. 1988). In contrast, if a Missouri court were to treat the marriage as voidable, the annulment decree would not relate back and validate the plaintiff's second marriage. Jordan v. Missouri & Kansas Telephone Company, 116 S.W.432 (Mo. App. 1909).

We are confident that a Missouri court determining the effect of the 1996 annulment decree, in determining the validity of the plaintiff's second marriage, would treat the initial marriage as voidable, and not void. Under Missouri collateral-estoppel law, a court will consider whether the party against whom collateral estoppel is asserted (here the Social Security Administration) was a party or in privity with a party to the prior adjudication, and whether that party had a full and fair opportunity to litigate the issue in the prior suit. See Oates v. Safeco Ins. Co. of America, 583 S.W.2d 713, 719 (Mo. 1979) (en banc). The annulment decree was the result of an ex parte proceeding. No party represented the Commissioner's interests, nor are the Commissioner and Mr. Everett in any type of privity with one another. Indeed, no party before the Court had any reason to oppose the decree or object to its language.

For this reason, notwithstanding the language of the annulment decree, we believe it is likely a Missouri court would now view the plaintiff's first marriage as voidable, not void. As the ALJ noted, Missouri law does not make a marriage entered into under the circumstances described by the plaintiff (duress) void. Although a marriage might be void if it is between underage parties, it can be validated by parental consent. See Mo. Ann. Stat. § 451.090. It is undisputed that the plaintiff's mother consented in writing to the marriage.

The next step is to determine the effect that an annulment of a voidable marriage has on a subsequent marriage. Here, Missouri law is clear. When a second marriage takes place prior to the annulment of a previous marriage, a decree annulling a voidable marriage does not relate back to the time of the marriage so as to validate a second marriage contracted before the annulment decree. Jordan, 116 S.W. at 434 (Mo. App. 1909). Therefore, the plaintiff's 1996 annulment did not relate back to validate her second marriage to the wage earner. For the purposes of the Social Security Act, the plaintiff never had a valid marriage to the wage earner. Accordingly, she does not qualify for Widow's Benefits.

The judgment of the District Court is affirmed.

HEANEY, Circuit Judge, dissenting.

With all due respect, the majority errs when it concludes that "[i]t is undisputed that the plaintiff had gone through a marriage ceremony with Mr. Everett . . . ."  To the contrary, there is no evidence in the record to support the view that plaintiff married Joseph Everett; thus, the question of whether the alleged marriage was annulled is irrelevant.  Accordingly, I respectfully dissent.

The plaintiff testified, without contradiction, that no marriage ceremony was ever performed between her and Mr. Everett.  At the administrative hearing, the following colloquy occurred:

> Q  So were you finally – were you married to Mr. Everett, then, after that?  Was there a ceremony?
>
> A  No.
>
> Q  Did you go before a justice of the peace?
>
> A  No.
>
> Q Did you go down to city hall?
>
> A  No, they released him from the police station at 12th and Clark. They brought him over to the city hall, and the police then taken the handcuffs off him, and told my mom that he was all hers, and my mom signed some papers with him signing and her signing.

(Admin. R. at 42-43.)

The administrative law judge (ALJ), whose responsibility it was to develop the record, made no further inquiry of plaintiff or any other witnesses to determine whether a marriage ceremony was performed. Rather, the ALJ apparently operated under the erroneous assumption that because plaintiff and Mr. Everett signed a marriage license application, a marriage ceremony took place. Under Missouri law, a marriage license alone is insufficient to constitute a marriage. See Mo. Rev. Stat. § 451.040(1) (2000) ("[N]o marriage hereafter contracted shall be recognized as valid unless the license has been previously obtained, and unless the marriage is solemnized by a person authorized by law to solemnize marriages.") (emphasis added).

In addition, plaintiff and Mr. Everett applied for the marriage license on September 10, 1953. The license was issued the same day. However, the license application notes: "Said License not to be issued prior to three days from date of application unless authorized by Court Order." (Admin. R. at 71); see also Mo. Rev. Stat. § 451.040 (1949) (requiring a three-day waiting period between the application and issuance of a marriage license, unless court orders otherwise). While the license application contains the handwritten words "Court Waiver," there is no evidence in the record of a court order permitting the license to be issued within the three-day period. Moreover, as the majority states in its opinion, Mr. Everett left town the following day never to be seen or heard from again.

Although the majority correctly concludes that Missouri distinguishes between "void" and "voidable" marriages, this discussion, as previously noted, is irrelevant. There is no evidence in the record supporting the position that plaintiff married Mr. Everett, and thus her marriage to Mitchell Reid was valid. For this reason, the plaintiff is entitled to benefits under the Social Security Act.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.