

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV–16–407

| | |
|---|---|
| CHRISTOPHER KLENAKIS<br><br>APPELLANT<br><br>V.<br><br>ANDREA KLENAKIS<br><br>APPELLEE | **Opinion Delivered** January 25, 2017<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72DR12-1479-7]<br><br>HONORABLE JOANNA TAYLOR, CIRCUIT JUDGE<br><br>REVERSED AND REMANDED |

### N. MARK KLAPPENBACH, Judge

This appeal concerns a request to terminate alimony. Appellant Christopher Klenakis and appellee Andrea Klenakis were divorced by a February 2013 Washington County Circuit Court decree. In their property-settlement agreement, which was approved by the trial court, the parties agreed that Christopher would pay alimony to Andrea but that it would terminate upon Andrea's death, remarriage, or cohabitation with a man to whom she was not married or related. In July 2015, Christopher petitioned the trial court to terminate alimony, alleging that Andrea was cohabiting with her boyfriend. After a hearing in February 2016, the Washington County Circuit Court entered an order on March 1, 2016, denying appellant's petition, finding that Andrea was not cohabiting with her boyfriend. Christopher appeals, arguing that the trial court's decision is clearly erroneous. We agree that the trial court clearly erred, and we reverse and remand.

SLIP OPINION

The facts are not in dispute. The property-settlement agreement between the parties provided for specific payments of alimony by Christopher to Andrea that were contemplated to last for five years. The alimony provision also recited that:

> Husband's alimony obligation shall terminate immediately upon Wife's death, remarriage, or upon Wife cohabiting (as that term is defined in Arkansas law) with a member of the opposite sex to whom she is not related by blood. Husband's alimony obligation to Wife is contractual and, therefore, non-modifiable.

At the February 2016 hearing on Christopher's petition, the following evidence was presented. Christopher and Andrea have two children, and he moved with the children to Iowa after the divorce, while Andrea remained in the marital home located at 2848 East Picasso Place in Fayetteville, Arkansas. An attorney ad litem represented the children both before and after the divorce, filing updates and reports for the court. Christopher asserted that those reports showed that Andrea's boyfriend, Travis Cook, was living with her and spending the night while Andrea had the children for visitation. Christopher stated that after he regained the right to possess the marital home in July 2015, he listed it for sale with a realtor.

After Andrea left the premises, the realtor, Meredith Dowse, entered the home and found evidence that led her to believe that a man and a woman had been living there. Dowse took pictures of that evidence. It appeared that the two-sink master bathroom was segregated into a woman's area and a man's area. There were toiletries on the counter on one side ("Woods for Men" and "Paris for Men"), as well as a razor. She found a "Body Wash for Men" container in the bathroom trash can. Dowse testified that there were men's shoes and shirts in the closet, and she found a large wet shirt in the washing machine that had "Arkansas Tool & Auto Repair" sewn onto the front, which was "obviously a man's shirt." She found

men's Hanes brand underwear in the house. Dowse found mail and other documents in the house with Travis Cook's name on them. An Aaron's Sales and Lease Ownership delivery form for a washer and dryer referenced that the delivery was to be made to Travis Cook at 2848 Picasso Place in Fayetteville. An Aaron's monthly payment receipt for the washer and dryer, dated April 17, 2015, listed Travis's name and the Picasso Place address. The realtor also found a file labeled "Travis & Andie–Rcts. CURRENT PURCHASES-RECEIPTS" with a photograph of a ring on it. Photographs of these items were introduced into evidence.

Andrea stated that Travis had been her boyfriend for several years and that he had spent the night with her at the Picasso Place address on average two to three nights per week. She stated that she was not dumb, she had read the divorce decree, and she was not living, nor had she ever, lived with a man. She said that they were not engaged. Andrea admitted that all of the clothing, the men's toiletries, and the documents in the photographs belonged to Travis and that she kept a file to organize their joint purchases. Andrea maintained, however, that she and Travis did not live together as Travis had a residence on Orchard Street in Springdale. She said that Travis came to visit her nearly every day and that he had his own washer and dryer at his house. Andrea testified that she spent, on average, approximately two nights per week with Travis at his Orchard Street address.

The trial court ruled from the bench that Andrea and Travis were in an intimate dating relationship but were not living together, although they were spending more time together than apart. The trial court recognized Andrea's testimony that they were spending the night together approximately four nights per week, staying at each other's homes approximately

two nights per week. The trial court found that the evidence did not meet the burden of proof to terminate alimony. The trial court denied Christopher's petition. A formal order was subsequently entered, and this timely appeal followed.

Christopher argues in his appellate brief that the trial court erred in refusing to terminate his alimony obligation to Andrea because she was clearly cohabiting with her long-time boyfriend. Andrea did not file an appellate brief in response. We first set out our standard of review and applicable law to the subject of this appeal.

We review domestic-relations cases de novo, but we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Hunter v. Haunert*, 101 Ark. App. 93, 270 S.W.3d 339 (2007). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake. *Id*. In reviewing a circuit court's findings of fact, we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Brown v. Brown*, 373 Ark. 333, 284 S.W.3d 17 (2008); *Blalock v. Blalock*, 2013 Ark. App. 659.

While the above standard applies to findings of fact, appellate courts will not defer to the circuit court on a question of law. *Jones v. Abraham*, 67 Ark. App. 304, 310, 999 S.W.2d 698, 702 (1999). The circuit court's decision will be reversed if it "erroneously applied the law and the appellant suffered prejudice as a result." *Id*. A question of law is presented when the facts are "undisputed or unequivocal." *Sterne, Agee & Leach, Inc. v. Way*, 101 Ark. App. 23, 31, 270 S.W.3d 369, 376 (2007); *see also Emerson v. Linkinogger*, 2011 Ark. App. 234, at

SLIP OPINION

4, 382 S.W.3d 806, 809.

A court has no authority to modify an independent contract that is made part of a divorce decree. *Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007). Alimony, in instances where there is an agreement, arises from a contract right, not an equitable right, through the system of justice. *Id*. While the agreement is still subject to judicial interpretation, we must apply the rules of contract construction in interpreting the agreement. *Id*. When a contract is unambiguous, its construction is a question of law for this court. *Id*. When contracting parties express their intention in a written instrument in clear and unambiguous language, it is the court's duty to construe the writing in accordance with the plain meaning of the language employed. *Id*.

The issue of cohabitation was discussed in *Collins v. Collins*, 2015 Ark. App. 525, 471 S.W.3d 665, where this court held that the term "cohabitation" is not ambiguous, meaning that it is not susceptible to more than one equally reasonable construction. The *Collins* decision recited two dictionary definitions for the word cohabitation:

> The Oxford English Dictionary--1. Dwelling or living together; community of life; 2. Living together as husband and wife (often with the implication of not being married."); and

> The American Heritage College Dictionary--1. To live together as spouses. 2. To live together in a sexual relationship when not legally married.

The *Collins* opinion stated that "the focus is living arrangements, with an emphasis upon the existence of a sexual relationship. Under these definitions, if a couple is living under the same roof and having sex, cohabitation is implicated." *Id*. at 9.

In *Collins*, this court affirmed the trial court's finding that the ex-wife was cohabiting

with her boyfriend, even though the boyfriend had his own apartment and did not help financially with the ex-wife's utilities or mortgage. The ex-wife asserted that she did not consider herself to be cohabiting or living with her boyfriend because they had two separate homes; they did not have any joint assets, debts, or shared expenses; and they generally spent two to three nights per week together, not every night. The ex-wife stated that her boyfriend kept some clothes at her house but kept his toiletries in a duffle bag. The trial court there ruled from the bench that this situation was clearly cohabitation and not even a close call. The ex-wife appealed the finding that she had cohabited with her boyfriend, and we affirmed the trial court's application of the unambiguous term "cohabitation" to the facts presented.

In this case, we are required to apply Arkansas law to the undisputed facts. When applying that law to these facts, the evidence of cohabitation is even more compelling than that in *Collins*. Andrea and Travis were in a long-term intimate dating relationship, visited each other nearly every day, made joint purchases, and spent the night together on average four nights of every week. Travis kept toiletries, clothing, and documents at Andrea's residence. Although he had a washer and dryer of his own, Travis acquired a washer and dryer for Andrea's residence, which he represented as his address. Although Andrea denied that they were living together on the basis that they maintained separate residences, it is clear that Andrea and Travis were "cohabiting" as the term has been defined in Arkansas law, given the analysis of the *Collins* case. The facts in this case are more compelling than those found in *Collins* to qualify as cohabitation for purposes of terminating alimony. The trial court clearly erred in its application of the law on these facts.

 

Reversed and remanded.

HARRISON and WHITEAKER, JJ., agree.

*Everett, Wales & Comstock*, by: *Jason H. Wales*, for appellant.

No response.