KENNETH S. HIXSON, Judge
Appellant Sameer Fares and appellee Kifah Fares obtained a marriage license in Missouri in 1990. The parties lived together, had four children,[1] and now reside in Little Rock, Arkansas. In 2015, Kifah filed a complaint for divorce in Pulaski County Circuit Court, and Sameer filed a counterclaim for divorce.
After the divorce proceedings had commenced, Sameer filed a petition for annulment of marriage or judgment declaring the marriage void. This petition was based on the fact that Sameer and Kifah are first cousins, making the marriage void under Missouri law. Missouri Annotated Statutes section 451.020 provides, in pertinent part:
All marriages between parents and children, including grandparents and grandchildren of every degree, between brothers and sisters of the half as well as the whole blood, between uncles and nieces, aunts and nephews, first cousins , and between persons who lack capacity to enter into a marriage contract, are presumptively void[.]
(emphasis added).[2]
After two hearings on Sameer's petition and Kifah's divorce complaint, the trial court entered a "Final Order & Decree of Divorce." In that order, the trial court denied Sameer's petition for annulment based on its finding that Sameer was estopped from denying the validity of the marriage. The trial court granted Kifah's complaint for divorce; awarded her custody of the parties' minor child; ordered Sameer to pay child support; ordered Sameer to pay alimony; awarded each party half of the parties' assets; and ordered Sameer's retirement benefits to be divided equally. The trial court subsequently entered an order awarding Kifah attorney's fees.
Sameer now appeals. On appeal, Sameer argues that the trial court erred in finding that he was estopped from denying the validity of the marriage and erred in denying his motion to declare the marriage void or annul the marriage. Sameer further argues that, because the parties were never married, the trial court erred in dividing their property in accordance with Arkansas *576 domestic-relations statutes, erred in dividing his retirement assets, erred in awarding alimony, and erred in awarding attorney's fees. We find no error and affirm.
We review domestic-relations cases de novo, but we will not reverse a trial court's finding of fact unless it is clearly erroneous. Klenakis v. Klenakis , 2017 Ark. App. 36, 510 S.W.3d 821. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the trial court has made a mistake. Id. In reviewing a trial court's findings of fact, we give due deference to the court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. Id.
While the above standard applies to findings of fact, appellate courts will not defer to the trial court on a question of law. Jones v. Abraham , 67 Ark. App. 304, 999 S.W.2d 698 (1999). The trial court's decision will be reversed if it erroneously applied the law and the appellant suffered prejudice as a result. Id.
After the complaint and counterclaim for divorce were filed, Sameer filed an amended counterclaim for divorce requesting that the trial court enforce a premarital agreement between the parties.[3] A preliminary hearing was held on this request, and at that hearing it was revealed in Kifah's testimony that she and Sameer are first cousins-their mothers are siblings. After this disclosure was made, Sameer's counsel filed Sameer's petition for annulment of marriage or judgment declaring the marriage void.
At the first of two subsequent hearings, it was established that Sameer was born in Kuwait and holds a Jordanian passport. Kifah is from Jordan. Sameer moved to the United States about nine years before Kifah, and he earned a civil-engineering degree. Through Sameer's mother, Sameer's marriage with Kifah (whom he had met only over the phone) was arranged in 1990. Kifah then came to the United States to marry Sameer, and they obtained a marriage license in Missouri.
Kifah testified that, when she came to the United States in 1990, Sameer spoke English but she did not.[4] Kifah now understands some English. Kifah relied on Sameer to provide for her and the family, while she took care of the home and the children. Kifah testified that in both Jordan and Kuwait it is culturally acceptable to be married to one's first cousin and that, when they got married, both she and Sameer knew they were first cousins. Kifah stated that she was not aware of the laws in Missouri and had no reason to believe they were not legally married for the twenty-six years prior to Sameer filing his petition to annul the marriage. During the marriage Kifah never heard Sameer say, nor did she have any evidence, that Sameer knew it was illegal in Missouri to marry one's cousin. Kifah stated that had she known the marriage was illegal she would not have married Sameer.
In Sameer's testimony, he too stated that he had no knowledge about the laws of Missouri. Sameer stated that he was aware that Kifah was his first cousin when he filed his counterclaim for divorce and that, had he known it was impermissible to be married to his cousin, he would have *577 told his attorney. Sameer testified that he did not know it was illegal to marry his cousin until his attorney advised him of that fact after the previous hearing when it came out in Kifah's testimony.
At the final hearing, Sameer testified that he believed he was entering into a legal marriage when he married Kifah in Missouri and had no reason to believe otherwise. He stated that throughout the marriage he introduced Kifah as his wife. He acknowledged that during the marriage he had obtained his master's degree and was finishing up his doctorate, and that the entire family, including Kifah, had relied on him financially. Sameer stated that he did not tell Kifah to not tell others that they are relatives but that he did tell her to say that, prior to the marriage, they knew each other through friends. Sameer maintained that he did not intend to lie to Kifah, engage in any dishonesty, or string her along. He stated that had he known it was illegal to marry his first cousin, he would not have married her.
Kifah testified:
After I came to the United States and married Mr. Fares, he asked me not to tell people that we were relatives. He said that it would be inappropriate to tell anyone. He did not tell me it was illegal. He just told me to not tell anyone we are relatives because it is not appropriate.... I would not have had children with Mr. Fares if we were not married. If we had not been married I would not have provided services. If the court grants the annulment, I will be left with nothing except my Arvest account with a few hundred dollars in it. I have no income except child support.... I did not ask Mr. Fares why he did not want me to tell people we are relatives but he did say it is not appropriate in America to suddenly get married to somebody they do not know. Just don't mention we are related.
The parties both gave testimony regarding the assets acquired during the marriage and other circumstances bearing on the issues of child custody, child support, and alimony. However, because this testimony has little to do with the issues on appeal regarding the validity of the marriage, we need not recite it here.
In the "Final Order & Decree of Divorce" now being appealed, the trial court made the following pertinent findings concerning Sameer's petition for annulment of marriage or judgment declaring the marriage void:
b. Factual Findings Regarding the Parties. At the time of the marriage, the Court finds that Defendant [Sameer] was fluent in English; Plaintiff [Kifah] was not. Defendant had lived in the United States for nine (9) years, had obtained one (1) degree-one (1) college degree-taught in English. [At the time of the parties' marriage], Plaintiff was a recent immigrant [to the United States] from the Middle East. After the marriage, the parties held themselves out to the world as husband and wife for twenty-six (26) or twenty-seven (27) years.
c. Course of Litigation. From the record, the divorce case was filed in 2015. Throughout the first year of litigation, the parties proceeded as if they were married, seeking a divorce and division of property from one another. Indeed, the Court finds that Defendant initially claimed that the Islamic Marriage Certificate constituted a Premarital Agreement that limited the recovery of his wife [Plaintiff]-his wife, nonetheless.
d. Court Findings Regarding Estoppel. The Court finds that during the history of the marriage between the parties that Defendant spoke fluent English; that his wife [Plaintiff] had some *578 English, but was not fluent; that he [Defendant] cautioned his wife [Plaintiff] not to refer to the fact that they were cousins without providing her an explanation; and that these facts indicate a superior knowledge on his [Defendant's] part or that he was-Defendant was, at least, what Brown vs. Imboden called "culpably negligent" in his conduct. The Court finds that last year, Defendant shifted tactics and began to claim for the first time that the marriage was "void ab initio " because the parties were first cousins, and "first-cousin" marriage in Missouri was prohibited, as it generally is in Arkansas. The Court finds that Plaintiff relied on the belief that she was married during the entirety of the marriage and performed services for Defendant that were not without value, including: the bearing and rearing of children; the cleaning of the home; acting as his spouse; being introduced and relying upon these facts; and, generally, being the "Wife."
The trial court then declared that Arkansas does not recognize marriage by estoppel but that case law gives reasons why the court might hold that there was an estoppel. The trial court then proceeded to give a summary of holdings from a line of Arkansas cases estopping a party from denying the validity of a marriage. The trial court found, from the facts of this case, that Sameer was estopped from denying the validity of the marriage. The trial court denied Sameer's petition for annulment, granted Kifah's divorce complaint, and issued its rulings pertaining to child custody, child support, alimony, and division of property.
In this appeal, Sameer argues that the divorce decree was erroneously entered because, according to Missouri law, the parties' marriage was void from its inception. Sameer also asserts that the trial court's ruling that he was estopped from denying the validity of the marriage was based on the trial court's misquotation of testimony and that the testimony did not support the trial court's findings regarding estoppel.
In its order, the trial court found that Sameer had cautioned his wife not to refer to the fact that they are cousins without providing her with an explanation. Sameer asserts that there was no testimony to support this finding. The trial court also found that the facts indicated "a superior knowledge on [Sameer's] part" and that he was at least culpably negligent in his conduct. Sameer also challenges this statement, contending that nothing in the record showed that he knew it was illegal to marry his cousin in Missouri until after the divorce proceedings began in this case.
Sameer argues that, in order to find him estopped from denying the validity of the marriage, he would have had to engage in some sort of wrongdoing or deceit. Sameer states that he had no knowledge that it was illegal to marry his cousin, he did not conceal anything from Kifah, nor did Kifah rely on his conduct in entering into the marriage. Sameer submits that this was merely a case of mutual ignorance because both parties were unaware that their marriage was illegal. That being so, Sameer maintains that the trial court erred in finding him culpably negligent.
Based on our review of the record and the trial court's order, we do not agree with Sameer's contention that the trial court's decision was based on a misquotation of the testimony. Nor do we conclude that the trial court clearly erred in finding on these facts that Sameer was estopped from denying the validity of the parties' marriage. While the trial court cited numerous cases in support of its decision in its order, we find three to be particularly relevant to our review.
*579 In Higgins v. Higgins , 266 Ark. 953, 588 S.W.2d 454 (Ark. App. 1979), the facts showed that appellant Charles Higgins and appellee Katie Higgins were married on April 4, 1975. The parties lived together for two and a half years, separated, and lived together for three more months before separating again. Katie filed for separate maintenance, at which time Charles introduced a divorce decree showing that he had not divorced his first wife until April 29, 1975, some twenty-five days after his remarriage. Charles contended that because there had been no divorce from his first wife at the time he married Katie, the marriage was absolutely void. The trial court concluded that the parties had lived together as man and wife and awarded separate maintenance to Katie. Charles appealed.
On appeal our court in Higgins noted that Arkansas does not recognize common-law marriages. Nonetheless, we concluded that Charles was estopped from asserting the invalidity of his marriage to Katie. In reaching this result we relied on Fox v. Fox , 247 Ark. 188, 444 S.W.2d 865 (1969), which quoted the California case Spellens v. Spellens , 49 Cal.2d 210, 317 P.2d 613, 618-20 (1957):
The theory is that the marriage is not made valid by reason of the estoppel but that the estopped person may not take a position that the divorce or latter marriage was invalid.... We think it may now be stated that the general public policy in this jurisdiction, as judicially interpreted, no longer prevents application in annulment actions of the laches and estoppel doctrines in determining the effect to be given such divorce decrees.... Rather it is that defendant by reason of his conduct will not be permitted to question its validity of the divorce; so far as he is concerned, he and plaintiff are husband and wife.... It may be noted also that we are not recognizing a common law marriage which does not exist in this state for the theory is that the marriage is not validated; it is merely that defendant cannot contest it.
Our court held that Charles Higgins, by reason of his conduct, was estopped to assert the voidness of his marriage to Katie.
In a subsequent court of appeals case, Brown v. Imboden , 28 Ark. App. 127, 771 S.W.2d 312 (1989), the issue was whether the probate court erred in finding that the appellant, Mae Ireland Brown, was not the legal surviving spouse of the decedent, Bill Brown. In that case, Bill had filed for divorce from his previous wife, Brenda, on February 27, 1981. Bill and Mae married on June 27, 1981. However, Bill's divorce decree from Brenda did not become effective until July 1, 1981, four days after Bill and Mae had married. Therefore, the marriage between Bill and Mae was invalid. After Bill died intestate in December 1987, a hearing was held to determine heirship, and the probate court found that Mae was not Bill's legal surviving spouse and that their June 27, 1981, purported marriage was void ab initio. On appeal, Mae contended that the appellee heirs should have been estopped from questioning the validity of her marriage to Bill. We agreed, and we reversed.
In reversing on a theory of estoppel, we explained:
As stated in Fox v. Fox , 247 Ark. 188, 444 S.W.2d 865 (1969) :
The theory [of estoppel] is that the marriage is not made valid by reason of the estoppel but that the estopped person may not take a position that the divorce or latter marriage was invalid.
....
[T]he defendant by reasons of his conduct will not be permitted to question *580 its validity or the divorce; so far as he is concerned, he and the plaintiff are husband and wife.
247 Ark. at 199, 444 S.W.2d 865. In the present case, it was the decedent who initiated the [marriage] of himself and the appellant, and it was at his insistence that she attend the divorce hearing. The evidence shows that the appellant relied, in good faith, on the validity of Bill's divorce from Brenda and relied in good faith on the validity of her marriage to Bill for almost seven years. On our de novo review, Taylor v. Hill , 10 Ark. App. 45, 661 S.W.2d 412 (1983), we find that Bill was at least culpably negligent in not determining that his divorce decree was final before initiating his [marriage] with the appellant and that he would have been estopped to deny that the decree was final. See J.F. Hasty & Sons v. Hampton Stave Co. , 80 Ark. 405, 97 S.W. 675 (1906).
By this holding, we do not declare the validity of common-law marriage in Arkansas. A legal common-law marriage cannot be entered into in Arkansas, nor can one be created by estoppel, but equity can, and we hold that it does, under the facts in this case, require that the parties be estopped from denying the validity of a marriage. Fox , supra ....
We hold that the estate and the heirs of Bill Brown are estopped from challenging the validity of Bill's marriage to the appellant because they stand in privity to the decedent. Because Bill himself would be barred from challenging the validity of the marriage, his heirs and his estate are in no better legal position to challenge the validity of Bill's marriage to the appellant.
Brown , 28 Ark. App. at 129, 771 S.W.2d at 313-14.
In another court of appeals case, Jessie v. Jessie , 53 Ark. App. 188, 920 S.W.2d 874 (1996), appellant Arthur Jessie and appellee Betty Jessie were married in July 1960. Although Betty had filed for divorce from her previous husband in March 1960, unbeknownst to either Betty or Arthur, there was no record that a divorce in that case had ever been granted. Throughout their marriage both Betty and Arthur thought they were legally married. After Betty filed for divorce from Arthur in 1994, Arthur asked that her divorce complaint be dismissed because there was no showing that a divorce decree was ever entered terminating Betty's prior marriage, thus rendering the parties' marriage void. The trial court denied Arthur's request, finding that by Arthur's conduct he was estopped from asserting such a defense. The trial court based its determination upon the extended duration of the marital relationship between the parties for thirty-four years, during which time both parties believed themselves to be legally and morally bound by matrimony, including raising a child together and discharging each party's respective obligations as a spouse. Quoting from Brown v. Imboden , we stated that, while a legal marriage cannot be created by estoppel, equity can require that parties be estopped from denying the validity of a marriage. We affirmed the trial court's ruling, holding that it was not clearly erroneous.
Applying these holdings to the pertinent facts of this case, we conclude that the trial court did not clearly err in finding that, due to Sameer's conduct, he was estopped from denying the validity of the parties' marriage. As an initial matter, we do not agree with Sameer's contention that the trial court misquoted the testimony. Kifah testified that, after the parties married, Sameer asked her not to tell people they are relatives because it would be inappropriate. The trial court found that Sameer had cautioned Kifah not to refer to *581 the fact that they are cousins without providing her an explanation, which we think was a fair characterization of Kifah's testimony. Sameer also contends that he engaged in no wrongdoing or concealment because he did not know it was illegal to marry his cousin and thought they were legally married until after the divorce proceedings were initiated. Based on the evidence, Sameer asserts that the trial court erred in finding him culpably negligent in his conduct.
From our reading of the pertinent cases, we do not believe it was necessary to prove that Sameer knew that marrying his cousin was illegal for the trial court to find him estopped from denying the validity of the marriage. In Jessie , supra , the evidence showed that neither party was aware that the wife's prior marriage had not been terminated prior to the parties' marriage, and yet we invoked an estoppel theory to affirm the trial court's finding that the husband was estopped from denying the validity of the marriage. And in Higgins , supra , we did not state in the opinion whether the husband knew that his prior marriage remained undissolved when he married the wife, stating only that by reason of the husband's conduct he was estopped to assert the voidness of his marriage.
While we acknowledge that the trial court found Sameer culpably negligent, we hold that this finding is not dispositive of the issue of estoppel. The trial court also found that Kifah relied on the belief that she was married during the entirety of the marriage, performed the services of a spouse, and had four children with Sameer. This reliance by Kifah was premised in part on the conduct of Sameer, who joined her in holding themselves out as a married couple for twenty-six years. The trial court found, based on Sameer's conduct of at all times acting as Kifah's husband, that he was estopped from denying the validity of the marriage. This was not clearly erroneous.
Our supreme court in Fox , supra , announced almost fifty years ago that the theory of estoppel is that the marriage is not made valid by reason of the estoppel, but that a defendant by reason of his conduct will not be permitted to question the validity of the marriage; so far as he is concerned, the parties are husband and wife. Since Fox was delivered, this principle has been consistently followed and applied. Sameer and Kifah obtained a marriage license, and for the next twenty-six years the parties proceeded to act as husband and wife and discharge their respective spousal duties as such, and in the process raised four children. We affirm the trial court's findings, from the facts of this case, that by reason of Sameer's conduct he was estopped to deny the validity of the marriage. Therefore, the decree granting Kifah a divorce was properly entered. Because Sameer's remaining arguments regarding division of property, alimony, and attorney's fees are all dependent on his claim that the marriage was invalid, these arguments are rejected, and the trial court's findings are affirmed in their entirety.
Affirmed.
Glover and Vaught, JJ., agree.

Only one of these children is still a minor.

In Everetts v. Apfel , 214 F.3d 990 (8th Cir. 2000), it was held that a void marriage is invalid from its inception if the parties are related in a prohibited manner under Mo. Ann. Stat. § 451.020.

This request by Sameer was ultimately denied by the trial court, which found that there was no valid premarital agreement, and this is not at issue on appeal.

Kifah had, however, studied English as a second language while she was in school in Jordan.