Cite as 2020 Ark. App. 382

# ARKANSAS COURT OF APPEALS

DIVISION IV
**No.** CV-19-936

| | |
|---|---|
| BRADLEY PRIDDY<br><br>APPELLANT<br><br>V.<br><br>TERESA PRIDDY (PFLUEGER)<br><br>APPELLEE | **Opinion Delivered:** September 9, 2020<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63DR-02-654]<br><br>HONORABLE ROBERT HERZFELD, JUDGE<br><br>AFFIRMED |

## BART F. VIRDEN, Judge

Appellant Bradley Priddy appeals from the Saline County Circuit Court's order establishing his ex-wife appellee Teresa Priddy's (Pflueger's) entitlement to 50 percent of Priddy's retirement benefits per their 2002 divorce decree with its incorporated property-settlement agreement (PSA). Priddy argues that the trial court erred in awarding Pflueger a portion of his retirement benefits based on equitable estoppel. Alternatively, Priddy contends that the trial court clearly erred in finding that Pflueger was entitled to the benefits because Pflueger was never legally his spouse and that the trial court clearly erred in enforcing the decree and PSA because the same court has found in three other cases between these parties that their marriage was void. We find no error in the trial court's application of equitable estoppel to the facts of this case and affirm the order.

I. *Background*

In 1985, Priddy married Belinda Nicodemus in Texas. The marriage lasted a matter of months. According to Priddy, Nicodemus had told him she was getting an annulment. Priddy moved to Arkansas and married Pflueger in 1987, and they have two children. Priddy filed for divorce in 2002.[1] The 2002 divorce decree incorporated a PSA prepared by Priddy's attorney whereby Priddy agreed to, among other things, pay Pflueger 50 percent of his retirement benefits from his employment with the United States Postal Service.

In November 2018, Pflueger filed a motion for entry of a retirement order to establish her entitlement to the benefits. She asserted in her motion that, although her second remarriage to Priddy had ultimately been declared void because he was still married to Nicodemus, (1) the 2002 decree and PSA are res judicata, (2) Priddy is estopped from contending that their first marriage was invalid, and (3) the PSA is a binding independent contract. Priddy responded to the motion alleging that Pflueger was not entitled to a portion of his retirement benefits because they were not legally married. A hearing was held.

Pflueger testified that when Priddy filed for divorce from her in 2002, he asserted in the complaint that there had been a valid marriage between the parties. She further testified that it was not until 2007 that she discovered Priddy was still married to another woman at the time of the parties' first marriage. Pflueger stated that she had asked Priddy about his prior relationship and that he had told her he had not been married to Nicodemus. Pflueger testified that she would not have married Priddy had she known he was already married.

---

[1]Later in 2002, the parties remarried and again divorced. In 2003, they married once again, and a divorce complaint was dismissed in 2010. There appears to be no dispute that the later remarriages and divorces were declared void, dismissed, or otherwise invalidated.

Priddy acknowledged that he had been married to Nicodemus but explained that, because Nicodemus had told him she was getting an annulment instead of a divorce, he had told Pflueger that he did not think he had ever been married to Nicodemus. Priddy said he found out that Nicodemus had not gotten an annulment when Pflueger told him in 2004 or 2005. A divorce decree dated 2007 was entered into evidence, indicating that Priddy had been married to Nicodemus from 1985 to 2007. Priddy testified that the 2007 divorce was "the only case at all" between him and Nicodemus.

## II. *Trial Court's Order*

In applying equitable estoppel, the trial court found that, even if the parties' first marriage was void, both parties believed they were married during the entire fifteen years after their wedding ceremony until many years after the 2002 divorce. The trial court found that Priddy was "attempting to benefit from his own failure to handle his affairs to the detriment of [Pflueger]." The trial court found that Pflueger had every reason to believe she was properly married to Priddy and that Priddy sought to—nearly twenty years after their divorce—deny Pflueger retirement funds he had promised her and on which she had planned to rely in her aging years. The trial court specifically found that Priddy had acted "wrongly." In a footnote, the trial court wrote,

> It is not too much to ask of adults to take reasonable and responsible actions to ensure they are aware of their own personal marital status by getting or at least seeing proper legal documents. Failure to handle legal business certainly has consequences, but it would be abhorrent for the one who failed to act responsibly to receive the benefit while the negative consequences fall like a crushing mudslide upon the innocent.

The trial court further found that Priddy sought to use his own bad acts to profit and to deprive Pflueger of what she reasonably expected under Arkansas divorce law and under

3

their own contract, which was written by Priddy's attorney and incorporated into the decree.[2]

The trial court pointed out that Priddy testified that the 2007 divorce was the only case between him and Nicodemus and that it was Priddy who knew or should have known that he had never divorced Nicodemus when he first married Pflueger as there had been no divorce or annulment until 2007. The trial court noted that Pflueger did not learn of Priddy's prior marriage and lack of divorce until years after the 2002 decree.

III. *Standard of Review*

We review domestic-relations cases de novo, but we will not reverse a trial court's finding of fact unless it is clearly erroneous. *Klenakis v. Klenakis*, 2017 Ark. App. 36, 510 S.W.3d 821. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the trial court has made a mistake. *Id.* In reviewing a trial court's findings of fact, we give due deference to the trial court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*

While the above standard applies to findings of fact, appellate courts will not defer to the trial court on a question of law. *Jenkins v. Jenkins*, 2017 Ark. App. 642. The trial court's

---

[2]The parties' PSA was incorporated, but not merged, into the 2002 divorce decree. It is well settled that a court has no authority to modify an independent contract that is made part of a divorce decree, with the exception of contracts concerning child custody and support. *Artman v. Hoy*, 370 Ark. 131, 257 S.W.3d 864 (2007); *Myers v. McCall*, 2014 Ark. App. 158.

4

decision will be reversed if it erroneously applied the law and the appellant suffered prejudice as a result. *Id.*

## IV. *Discussion*

Priddy notes that the elements of equitable estoppel are (1) the party to be estopped must know the facts; (2) he or she must intend that his or her conduct will be acted on or must so act that the party asserting estoppel has a right to believe the other party so intended; (3) the party asserting estoppel must be ignorant of the facts; (4) the party asserting estoppel must rely on the other's conduct to his or her detriment. *Brown v. Brown*, 83 Ark. App. 217, 125 S.W.3d 840 (2003). Priddy argues that Pflueger had the burden of proving equitable estoppel but that she presented no evidence of its elements, specifically, his knowledge of the facts and intent to benefit. He claims that the trial court improperly shifted the burden of proof to him.

While Priddy may have been unaware that Nicodemus did not have their marriage annulled, he knew that the 2007 divorce case was the only case at all between him and Nicodemus. There was no evidence that he did anything to confirm that his marriage to Nicodemus had ended by some means before marrying Pflueger. Pflueger had no reason to suspect her marriage to Priddy was invalid and did not learn that Priddy was still married to Nicodemus until 2007. With respect to his intent to benefit, Priddy contends that the trial court made assumptions about who had benefited from the 2002 decree and PSA and that the trial court would not permit him to testify about whether he had, in fact, benefited. Both parties had an opportunity to testify and offer evidence at the hearing. When the trial court, in an attempt to move things along, said that "both parties received benefits in their

5

contract," Priddy did not dispute this characterization. The limited issue at the hearing was Pflueger's entitlement to a portion of Priddy's retirement benefits, which hinged on the validity of Priddy's marriage to Pflueger—not on which party received the greater benefit from the 2002 decree and PSA. While a legal marriage cannot be created by estoppel, equity can require that parties be estopped from denying the validity of a marriage. *See Fox v. Fox*, 247 Ark. 188, 444 S.W.2d 865 (1969). In *Bethell v. Bethell*, 268 Ark. 409, 597 S.W.2d 576 (1980), the Arkansas Supreme Court wrote that

> [a] party who by his acts, declarations or admissions, or by his failure to act or speak under circumstances where he should do so, either with design or willful disregard of others, induces or misleads another to conduct or dealings which he would not have entered upon, but for such misleading influence, will not be allowed, because of estoppel, afterward to assert his right to the detriment of the person so misled.

*Bethell*, 268 Ark. at 424, 597 S.W.2d at 583.

The trial court's order indicates that it found that Priddy had failed to act or speak under circumstances in which he should have acted or spoken; that perhaps by only his willful disregard of others, Priddy married Pflueger when the status of his prior marriage was unknown or unconfirmed; that Pflueger would not have married Priddy had she known he was already married; and that, approximately sixteen years after agreeing to give Pflueger a portion of his retirement benefits as part of their divorce, Priddy sought to prevent Pflueger from obtaining those benefits, which she expected to receive through the parties' divorce and in accordance with their independent contract. Moreover, Priddy and Pflueger were together as a married couple for fifteen years, represented themselves to the public as husband and wife, and have two children. The trial court found that Priddy was estopped

6

from contending that their marriage was invalid such that the 2002 decree and incorporated PSA were void. We find no error.

In *Higgins v. Higgins*, 266 Ark. 953, 588 S.W.2d 454 (Ark. App. 1979), Charles and Katie were married on April 4, 1975. They lived together for two and a half years, separated, and lived together for three more months before separating again. Katie filed for separate maintenance. At trial, Charles introduced a divorce decree showing that he had not divorced his first wife Margie until April 29, 1975, some twenty-five days after his marriage to Katie. Charles argued that the parties' marriage was thus absolutely void and that there could be no award of separate maintenance. The trial court, in awarding separate maintenance to Katie, concluded that the parties had lived together as man and wife and held themselves out as being married and that Charles was obligated to support Katie. On appeal, we noted that, while Arkansas does not recognize common-law marriages, Charles, by reason of his conduct, was estopped from asserting the invalidity of his marriage to Katie.

In the more recent case of *Fares v. Fares*, 2018 Ark. App. 499, 563 S.W.3d 574, after twenty-six years of marriage, the wife, Kifah, sought a divorce from her husband, Sameer. Sameer initially counterclaimed for divorce but then filed a petition for annulment or a declaration that their marriage was void because he and Kifah are first cousins. After they were married, Sameer had cautioned Kifah not to tell others that they are related because it is inappropriate. Sameer had claimed that he did not engage in wrongdoing because he did not know until after divorce proceedings had begun that it was illegal in Missouri to marry a first cousin. He asserted that it was a case of "mutual ignorance." The trial court, however, found that Sameer had "superior knowledge" and was "at least culpably negligent." This

court concluded that this finding was not dispositive on the issue of estoppel and pointed to the trial court's other findings that Kifah believed she was married to Sameer during the entirety of the marriage, that she had performed the services of a spouse, and that she had four children with Sameer. The trial court also noted that Kifah's reliance and belief were premised, in part, on Sameer's conduct of joining Kifah in holding themselves out to the public as a married couple. Finding no error in the trial court's decision that Sameer was estopped from contesting the validity of his marriage to Kifah, we affirmed.

In light of the above authorities, we cannot say that the trial court erred in finding that Priddy was estopped from asserting the invalidity of his marriage to Pflueger; accordingly, we affirm the trial court's decision that Pflueger is entitled to 50 percent of Priddy's retirement benefits per the parties' 2002 decree and PSA. We need not address Priddy's alternative arguments. *See Fares*, *supra*.

Affirmed.

HARRISON and BROWN, JJ., agree.

*Brown Law Firm*, by: *Rebecca Brown*, for appellant.

*Knollmeyer Law Office, P.A.*, by: *Michael Knollmeyer*, for appellee.