Cite as 2024 Ark. App. 418

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-23-224

|  |  |  |  |
|---|---|---|---|
| ALLYSON SCOTT | | Opinion Delivered September 11, 2024 | |
| | APPELLANT | APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, NINTH DIVISION [NO. 60DR-21-653] | |
| V. | | | |
| RICHARD BARNES | | HONORABLE ANDREW GILL, JUDGE | |
| | APPELLEE | AFFIRMED | |

## WENDY SCHOLTENS WOOD, Judge

Allyson Scott and Richard Barnes were divorced pursuant to a decree entered by the Pulaski County Circuit Court on October 10, 2022. Allyson appeals from the finding in the decree that prohibits either party from implanting an embryo that was created by in vitro fertilization (IVF) during their marriage "without express, written consent of the other party." For her sole point on appeal, Allyson argues that "the [circuit] court erred in improperly holding both [her] and [Richard] responsible for the embryo under the contract while allowing [Richard] to forsake the duty to abide by the contract and unilaterally deprive [her] of her property right to the embryo and leaving [her] with the entire cost which includes the continuing obligation to pay storage fees." We affirm.

The parties married in 2012. Richard has two children from a previous marriage but was aware prior to their marriage that Allyson wanted to have children; therefore, Richard had a vasectomy-reversal procedure in 2014. They tried to conceive for a year but were

unsuccessful. In 2015, they pursued IVF through Reproductive Medical Associates (RMA) in New Jersey, which resulted in one embryo created from Allyson's egg and Richard's sperm. The parties chose not to implant the embryo, which is stored in New Jersey, at that time because Allyson was in school to obtain an advanced nursing degree and was concerned about the stress of school affecting the chances of a successful pregnancy. By the time Allyson completed her degree, the marriage was suffering, and the parties lived in different states.

Richard filed for divorce in 2021. The only contested issue was the disposition of the embryo. Allyson wanted to implant the embryo, but Richard did not.

The parties submitted trial briefs. In her brief, Allyson asked the circuit court to award her possession of the embryo so she could implant it to become pregnant. She argued that this was an issue of first impression in Arkansas, and she identified three approaches other jurisdictions have used to determine the disposition of an embryo in a divorce: the contract approach, the balancing-interest approach, and the mutual-consent approach. *See, e.g., Jessee v. Jessee*, 866 S.E.2d 46 (Va. Ct. App. 2021); *Jocelyn P. v. Joshua P.*, 250 A.3d 373 (Md. App. 2021); *In re Marriage of Rooks*, 429 P.3d 579 (Colo. 2018). Allyson argued that the contract approach does not apply because the forms the parties signed with the IVF company did not specifically address the disposition of the embryo upon divorce. She claimed that the IVF contracts were adhesion contracts and "did not express the parties' intent in this regard." Allyson asked the circuit court to follow the balancing-interest approach and award her the embryo.

In his brief, Richard argued that upholding an executed contract is not an issue of first impression in Arkansas. He pointed out that when the parties pursued IVF with RMA, they executed a form titled "Disposition Declaration," which provided that any resulting embryos could not be used to produce a pregnancy against the wishes of the partner and gave a specific example that the embryos could not be used to create a pregnancy in the event of separation or divorce without the "express, written consent of both parties." Richard asked the circuit court to honor this agreement by preventing Allyson from using the embryo to create a pregnancy without his express, written consent. He agreed that Arkansas case law and statutes are silent on the specific issue of how to dispose of an embryo in a divorce action, and he argued that the contract approach should apply in this case.

A final divorce hearing was held on April 8, 2022. Both Allyson and Richard testified, and their counsels' arguments were consistent with the arguments made in their trial briefs.

In a September 30, 2022 order, the circuit court found that the parties had reached an agreement on all divorce issues except the disposition of the embryo, which "the parties both recognize as property of a special nature." The order further found that "[b]oth parties believed that the contract they signed with the IVF provider would require that they both consent before the embryo could be implanted or destroyed" and that "the parties agree that this is a case of first impression in Arkansas." Rather than deciding which of the three approaches to use, the court applied the facts to each approach and reached the same conclusion:

> All three [approaches] lead to this Court's conclusion and decision to not force an unwanted pregnancy and potentially a child on [Richard] when [Allyson] has other means to pursue procreation. Therefore, this Court will not order the destruction of the embryo, but neither party shall be permitted to implant, or cause to be implanted, the embryo without express, written consent of the other party.

This order was incorporated into the final divorce decree entered October 10. This appeal followed.

We review domestic-relations cases de novo, but we will not reverse a circuit court's finding of fact unless it is clearly erroneous. *Klenakis v. Klenakis*, 2017 Ark. App. 36, at 4, 510 S.W.3d 821, 823. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that the circuit court has made a mistake. *Id.*, 510 S.W.3d at 823. In reviewing the circuit court's findings of fact, we give due deference to the circuit court's superior position to determine the credibility of the witnesses and the weight to be accorded to their testimony. *Id.*, 510 S.W.3d at 823. Although the above standard applies to findings of fact, appellate courts will not defer to the circuit court on a question of law. *Priddy v. Priddy*, 2020 Ark. App. 382, at 5, 606 S.W.3d 596, 599. The circuit court's decision will be reversed if it erroneously applied the law and the appellant suffered prejudice as a result. *Id.*, 606 S.W.3d at 599.

On appeal, Allyson abandons all the arguments she made below. She does not challenge the circuit court's findings that Richard's consent is required to use the embryo under any of the three approaches used in other jurisdictions. For example, Allyson argued to the circuit court that the contract approach did not apply because there was no agreement between her and Richard regarding the disposition of the embryo upon their divorce. Yet

4

on appeal, her arguments are premised on the validity of the contract she contested below. In her brief, she notes that the circuit court found that there was a valid contract between the parties prohibiting them upon divorce from implanting the embryo without the express, written consent of the other party, and then she concedes that "both parties knew and operated under the obligations of the RMA agreement, which were established by their acknowledgment." Thus, as the issues are framed on appeal, this case does not present the question of which (if any) of the "embryo-disposition approaches" are applicable under Arkansas law.

Instead, Allyson argues on appeal that (1) Richard is in breach of contract because he testified that "he had no intention of paying any storage fees, which is a clear violation of the agreement to store the embryo"; and (2) Richard "should not be able to benefit from the convenience of a contract he wants enforced and have no financial responsibility under said contract." She contends that due to Richard's "failure to act in good faith and deal fairly with [her]," this court should reverse the circuit court's ruling requiring the parties to provide express, written consent to use the embryo.

Although Allyson argues that we should reverse the circuit court's order because Richard breached the contract (which she now concedes is valid) because he testified that he will not pay the storage fees, she did not claim below that Richard had breached the contract or raise any argument related to Richard's alleged failure to comply with their agreement. Allyson testified that she pays over $1000 a year in storage fees, but she did not introduce evidence of payments or ask the court to order Richard to pay any portion of the fees. These

arguments are being raised for the first time on appeal. It is well settled that this court does not consider arguments raised for the first time on appeal, and a party cannot change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial. *Exigence, LLC v. Baylark*, 2010 Ark. 306, at 10, 367 S.W.3d 550, 555. Insofar as the testimony and argument related to the storage fees could be interpreted to have been a request for payment, Allyson did not get a ruling. We will not address an argument on appeal if a party has failed to obtain a ruling below. *Id.*, 367 S.W.3d at 555.

Because Allyson's arguments on appeal are not preserved for review, we affirm.

Affirmed.

VIRDEN and BROWN, JJ., agree.

*Big Rock Legacy Law Group Attorneys & Counselors, PLC*, by: *Leon Jones, Jr.*, for appellant.

*Robertson, Oswalt & Nony*, by; *Chris Oswalt*, for appellee.