Cite as 2026 Ark. App. 175

# ARKANSAS COURT OF APPEALS
## DIVISION III
No. CV-25-490

| | | |
|---|---|---|
| JASMINE HENSON | | Opinion Delivered March 11, 2026 |
| | APPELLANT | |
| | | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT |
| V. | | [NO. 72JV-23-523] |
| ARKANSAS DEPARTMENT OF HUMAN SERVICES AND MINOR CHILDREN | | HONORABLE DIANE WARREN, JUDGE |
| | APPELLEES | AFFIRMED; MOTION TO WITHDRAW GRANTED |

**WENDY SCHOLTENS WOOD, Judge**

Counsel for Jasmine Henson brings this no-merit appeal from the Washington County Circuit Court's order entered on May 19, 2025, terminating her parental rights to Minor Child 1 (MC1) (05/28/10); Minor Child 2 (MC2) (05/12/12); and Minor Child 3 (MC3) (03/14/14). Pursuant to *Linker-Flores v. Arkansas Department of Human Services*, 359 Ark. 131, 194 S.W.3d 739 (2004), and Arkansas Supreme Court Rule 6-9(j), her counsel has filed a no-merit brief asserting that there are no issues of arguable merit to support an appeal. Counsel has also filed a motion asking to be relieved. The clerk of this court sent a copy of the brief and motion to be relieved to Jasmine, informing her that she had the right to file pro se points for reversal under Arkansas Supreme Court Rule 6-9(j)(3). She has filed no

points. We grant counsel's motion to withdraw and affirm the order terminating her parental rights.

The Arkansas Department of Human Services (DHS) exercised an emergency seventy-two-hour hold on the children on September 8, 2023, after the Fayetteville Police Department contacted DHS to request assistance at the Children's Safety Center in Springdale. MC1 disclosed that his father, Michael Henson, had been sexually abusing him since MC1 was ten years old.[1] Michael admitted the abuse and was arrested for second-degree sexual abuse and rape. Jasmine admitted that she had lied during a previous investigation into MC1's allegations and that Michael had continued to live in the same residence with her and the children since that investigation. Jasmine was arrested for permitting child abuse. DHS filed a petition for emergency custody and dependency-neglect of MC1, MC2, and MC3 on September 11, and the court entered an ex parte order the same day. Both parents were incarcerated in the Washington County Detention Center and stipulated to probable cause for issuance of the ex parte order.

The circuit court entered an adjudication order on December 28 finding the children dependent-neglected due to sexual abuse, neglect, failure to protect, and parental unfitness. The circuit court stated that both parents were under a no-contact order with the children in their criminal-court cases and independently ordered that there be no contact between

---

[1]Michael Henson is the biological father of MC1, MC2, and MC3. Michael and Jasmine were married when the case began and at the time of the termination hearing. The circuit court terminated both parents' rights in its order, but Michael is not a party to this appeal.

Michael and the children. The court set the goal of the case as reunification with Jasmine. The court said that before it would allow Jasmine to have contact with the children (assuming her criminal no-contact order would be lifted), she must persuade it that she had gained some insight regarding the effect of the abuse on the children. Although Jasmine testified that she intended to divorce Michael, there was some evidence that she had continued to communicate with him in jail and had expressed a desire to focus on their family. Consequently, the court also set a concurrent goal of adoption following termination of parental rights.

At a February 13, 2024, review hearing, the court found Jasmine was partially compliant with the case plan since she had not started parenting classes or submitted to a psychological evaluation, but she had begun counseling and was preparing to divorce Michael. At a June 18 permanency-planning hearing, the court determined that although Jasmine had made some progress, she had not resolved the criminal charges that prohibited contact with MC1.

The court held a second permanency-planning hearing on August 20, at which it found that Jasmine had made a good-faith effort in the case. She had her own home, was working at McDonald's, and reported that she had completed seven hours of parenting classes. She had also completed a psychological exam, which reported that she met the criteria for PTSD and borderline personality disorder. However, the court found that the recommendation had been for Jasmine to participate in individual counseling and family therapy, and she had not provided proof of either to DHS or the court. Moreover, she had

submitted to hair-follicle tests and had tested positive for methamphetamine and THC. There was also a new true finding for substance misuse due to allegations that the parents had provided controlled substances to the children before they entered DHS custody. The court found that the children could not be returned to Jasmine and that there was little likelihood they could be returned within the next three months. It changed the goal of the case to adoption following the termination of parental rights.

The court held a termination hearing on April 7, 2025, following DHS's petition for termination. At the beginning of the hearing, DHS introduced filings from both Michael's and Jasmine's criminal proceedings. It also introduced Jasmine's psychological evaluation and her hair-follicle test results from May 20 and August 15, 2024.

The DHS family-service worker, Zaina Grant, testified first. She said that she was not the initial caseworker but had been assigned to the case on January 5, 2025. She stated she had reviewed the facts of the case and that Michael and Jasmine had remained married, and the children were now fourteen, twelve, and eleven years old. She said DHS had referred Jasmine for individual counseling at one place, but she had instead attended counseling at Community Clinic. Grant said that when she asked Jasmine to provide the records to her directly, Jasmine told Grant to get the information herself. Grant testified that she contacted Community Clinic but had been unable to obtain Jasmine's records. Grant said Jasmine's May 2024 hair-follicle test was positive for methamphetamine and THC, and her August 2024 test was positive for THC. Grant said she had been unable to get Jasmine to report for any drug screens after that time, although she had asked Jasmine to appear for five random

4

screens since she took over the case in January 2025. Grant said that since September 2023 when DHS took custody of the children, there had been no family counseling or visits between Jasmine and the children, both parents' criminal cases were still pending, and neither parent had provided any financial support for the children.

The DHS adoption specialist, Brenna McClure, testified that the children had initially been placed with an aunt, who asked that they be removed. MC2 was currently in one foster home, and MC1 and MC3 were placed together in a different foster home that includes services and counseling in addition to a traditional foster-home setting. She said that the siblings were visiting and that the visits were going well. She said that initially there had been some physical altercations between MC1 and MC2 and that MC2 had struggled with adjusting to new places and new people but that all three children were currently active in therapy and doing well in school. She said that there is not a prospective adoptive home for the children at the moment but that all three are adoptable, and the children have no impediments or special needs that might prevent their adoption.

Jasmine testified that she had not participated in the drug screens requested by DHS because it had conflicted with her work schedule. She said she had participated in counseling with Community Clinic off and on for over a year but was not aware that she was supposed to go weekly, and she thought she had signed a release for the records to be given to DHS. She said that she was still married to Michael but was in the process of getting a divorce. She said her criminal hearing was scheduled for the week after the termination hearing, and she

expected to enter a negotiated guilty plea to serve forty-four days in jail followed by probation. She said that she had lied about Michael's abuse of MC1 because she was scared of him.

At the conclusion of the hearing, the circuit court found clear and convincing evidence of all six grounds alleged in the petition[2] and found that the termination was in the best interest of the children. The court entered a termination order on May 19, 2025. Jasmine appealed.

Arkansas Supreme Court Rule 6-9(j)(1) allows counsel for an appellant in a termination case to file a no-merit brief and motion to withdraw if, after studying the record and researching the law, counsel determines that the appellant has no meritorious basis for appeal. In the brief, counsel must include an argument section that lists all circuit court rulings that are adverse to the appellant on all objections, motions, and requests made by the party at the hearing from which the appeal arose and an explanation why each adverse ruling is not a meritorious ground for reversal. Ark. Sup. Ct. R. 6-9(j)(1)(A). In evaluating a no-merit brief, we determine whether the appeal is wholly frivolous or whether there are any issues of arguable merit for appeal. *Linker-Flores*, 359 Ark. at 141, 194 S.W.3d at 748; *Cullum v. Ark. Dep't of Hum. Servs.*, 2022 Ark. App. 34, at 6.

---

[2]The grounds for termination include twelve-month failure to remedy; twelve-month failure to provide significant material support or maintain meaningful contact; dependency-neglect as a result of sexual abuse perpetrated by the juvenile's parent; other subsequent factors; that a parent had been sentenced in a criminal proceeding for a period of time which would constitute a substantial period of the juvenile's life; and aggravated circumstances. Ark. Code Ann. § 9-27-341(b)(3)(B)(i)*(a)*, (ii)*(a)*, (vi)*(a)*, (vii)*(a)*, (viii)*(a)*, (ix)*(a)(3)(A)* (Supp. 2023).

A circuit court's order terminating parental rights must be based on findings proved by clear and convincing evidence. Ark. Code Ann. § 9-27-341(b)(3). Clear and convincing evidence is defined as that degree of proof that will produce in the fact-finder a firm conviction as to the allegation sought to be established. *Posey v. Ark. Dep't of Hum. Servs.*, 370 Ark. 500, 503, 262 S.W.3d 159, 162 (2007). On appeal, the appellate court reviews termination-of-parental-rights cases de novo but will not reverse the circuit court's ruling unless its findings are clearly erroneous. *Id.*, 262 S.W.3d at 163. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Lee v. Ark. Dep't of Hum. Servs.*, 102 Ark. App. 337, 344, 285 S.W.3d 277, 281–82 (2008). In determining whether a finding is clearly erroneous, an appellate court gives due deference to the opportunity of the circuit court to assess the witnesses' credibility. *Id.*, 285 S.W.3d at 281.

To terminate parental rights, a circuit court must find clear and convincing evidence as to one or more of the grounds for termination listed in Ark. Code Ann. § 9-27-341(b)(3)(B); *Trogstad v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 443, at 5, 609 S.W.3d 661, 665. Proof of only one ground is necessary to terminate parental rights. *Kirtley v. Ark. Dep't of Hum. Servs.*, 2024 Ark. App. 43, at 10, 683 S.W.3d 220, 228. The circuit court must also find by clear and convincing evidence that termination is in the best interest of the juvenile, taking into consideration (1) the likelihood that the juvenile will be adopted if the termination petition is granted; and (2) the potential harm, specifically addressing the effect

7

on the health and safety of the child, caused by returning the child to the custody of the parent. Ark. Code Ann. § 9-27-341(b)(3)(A)(i) & (ii).

Counsel correctly states that the only adverse ruling in this case was the termination itself. Counsel first addresses the circuit court's determination that statutory grounds exist for termination, stating that that there is no meritorious defense to grounds because Jasmine's trial counsel stated at the outset of the termination hearing that Jasmine was not contesting grounds but only best interest. In closing argument, Jasmine's counsel again said that while DHS had proved grounds, she did not believe it had proved it was in the children's best interest to terminate Jasmine's parental rights. Because trial counsel conceded that DHS had proved grounds, counsel notes that she is bound by that position on appeal and thus there is no meritorious defense to the court's determination that statutory grounds exist to support termination of her rights. *See Taylor v. Ark. Dep't of Hum. Servs.*, 2020 Ark. App. 227, at 3–4 (holding that the parties are bound by the scope of the arguments presented at trial and that we will not consider arguments made for the first time on appeal even in termination-of-parental-rights cases); *see also Scott v. Barnes*, 2024 Ark. App. 418, at 6, 698 S.W.3d 394, 397 (recognizing that a party may not change the grounds for an objection or motion on appeal but is bound by the scope and nature of the arguments made at trial). Moreover, counsel states that only one ground is necessary to support the termination of parental rights and that sexual abuse perpetrated by a parent, one of the grounds found by the court, constitutes grounds for termination of the parental rights of one or both of the

8

parents. Ark. Code Ann. § 9-27-341(b)(3)(B)(vi)*(a)*; *Parnell v. Ark. Dep't of Hum. Servs.*, 2018 Ark. App. 108, at 24, 538 S.W.3d 264, 278.

Counsel also addresses the circuit court's findings of best interest. She explains that the court had sufficient evidence to find that the children faced potential harm if returned to Jasmine's care and that the children are adoptable. We agree that there can be no meritorious challenge to the circuit court's best-interest finding. Jasmine had permitted the sexual abuse to continue after she knew it was occurring, and in spite of the circuit court's and DHS's request that she demonstrate she had gained insight regarding the effect of the abuse and her role in it through counseling, she failed to provide this reassurance from any mental-health professional. *Yelvington v. Ark. Dep't of Hum. Servs.*, 2019 Ark. App. 337, at 6–7, 580 S.W.3d 874, 878 (holding that a parent's failure to protect her child against sexual abuse by his father supported circuit court's potential-harm finding). In addition, she was still married to Michael at the time of the termination hearing despite her assurances to the court throughout the case that she was divorcing him. Finally, Jasmine tested positive for methamphetamine and THC during the pendency of the case, and there was no evidence at the termination hearing that she had resolved these substance-abuse issues. *Furnish v. Ark. Dep't of Hum. Servs.*, 2017 Ark. App. 511, at 13, 529 S.W.3d 684, 692 (stating that caselaw is clear that a parent's continuing use of illegal drugs poses a risk of harm to the children if returned to that parent). Regarding adoptability, the adoption specialist testified that the children are adoptable and that the children have no impediments or special needs that might prevent adoption, which has been held to be sufficient evidence supporting the

9

adoptability consideration. *Thompson v. Ark. Dep't of Hum. Servs.*, 2012 Ark. App. 124, at 5 (holding that testimony from caseworker that the children are adoptable was sufficient to support circuit court's best-interest finding).

From our review of the entire record and the brief presented by Jasmine's counsel, we have determined that counsel has complied with the requirements for no-merit appeals in termination cases, and we hold that the appeal is wholly without merit. Accordingly, we affirm the termination order and grant counsel's motion to withdraw.

Affirmed; motion to withdraw granted.

GLADWIN and MURPHY, JJ., agree.

*Elizabeth James*, Arkansas Commission for Parent Counsel, for appellant.

One brief only.